(No. 63274.—
(Nos. 63384, 63716 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. AARON PORTER, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. NATHANIEL SINGLETON, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARVA MASON, a/k/a Linda Wells, Appellee.

*Opinion filed February 11, 1988.—Modified on denial of rehearing April 5, 1988.*

SIMON, J., dissenting.

Steven Clark, Deputy Defender, and Kenneth L. Jones, Barbara C. Kamm, Michael J. Pelletier and Debra R. Salinger, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Thomas V. Gainer, Jr., and Christopher J. Cummings, Assistant State's Attorneys, of counsel), for the People.

Steven Clark, Deputy Defender, and Kenneth L. Jones, Barbara C. Kamm, Michael J. Pelletier and Debra R. Salinger, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Thomas V. Gainer, Jr., and Christopher J. Cummings, Assistant State's Attorneys, of counsel), for the People.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Thomas V. Gainer, Jr., and Christopher J. Cummings, Assistant State's Attorneys, of counsel), for the People.

Steven Clark, Deputy Defender, and Kenneth L. Jones, Barbara C. Kamm, Michael J. Pelletier and Debra R. Salinger, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE RYAN delivered the opinion of the court:

Defendants, Marva Mason, a/k/a Linda Wells, Aaron Porter, and Nathaniel Singleton, filed separate post-conviction petitions and motions for appointment of counsel to represent them on their petitions in the separate cases in the circuit court of Cook County. All three petitions were dismissed as "patently without merit" pursuant to section 122–2.1 of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122–2.1) without appointment of counsel. In cause No. 63716 (Mason), the appellate court, first district, fourth division, held that section 122–2.1 is unconstitutional because: (1) section 122–2.1 conflicts with Supreme Court Rule 651(c) (107 Ill. 2d R. 651(c)), which requires the appointment of counsel at the appellate level, and (2) section 122–2.1 violates due process because it denies indigent petitioners meaningful access to the courts. (145 Ill. App. 3d 218.) In cause No. 63274 (Porter) and No. 63884 (Singleton), the second and fifth divisions, respectively, of the appellate court, first district, affirmed the trial court's dis-

missals and rejected the argument that section 122—2.1 is unconstitutional. 141 Ill. App. 3d 208; 143 Ill. App. 3d 1159 (Order under Supreme Court Rule 23).

Defendants Porter and Singleton filed petitions for leave to appeal in No. 63274 and No. 63884, which were granted. The State filed a petition for leave to appeal under Rule 317 (107 Ill. 2d R. 317) in People v. Mason, No. 63716, which was also granted, and these cases were consolidated in this court.

These cases present the following questions for review: (1) whether section 122—2.1 of the Post-Conviction Hearing Act is constitutional, (2) whether section 122—8 of the Post-Conviction Hearing Act, which has been held unconstitutional by this court, is severable from section 122—2.1, and (3) whether the trial court complied with certain provisions of section 122—2.1.

I

The defendants contend that section 122—2.1 is unconstitutional because it permits dismissal of post-conviction petitions which are deemed to be frivolous prior to the appointment of counsel. Section 122—2.1 provides:

> "(a) Within 30 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this Section. If the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision. Such order of dismissal is a final judgment and shall be served upon the petitioner by certified mail within 10 days of its entry." (Ill. Rev. Stat. 1985, ch. 38, par. 122—2.1(a).)

If the petition is not dismissed pursuant to section 122—2.1, the indigent defendant is entitled to appointment of counsel. See Ill. Rev. Stat. 1985, ch. 38, par. 122—4.

In support of their assertion that section 122—2.1 is unconstitutional, defendants claim that: (1) section 122—2.1 conflicts with Supreme Court Rule 651(c) (107 Ill. 2d R. 651(c)), and therefore violates the doctrine of separation of powers, (2) denying counsel to indigent post-conviction petitioners violates the due process clauses of the Federal and State Constitutions, and (3) section 122—2.1 violates the doctrine of equal protection because counsel is provided as a matter of right for indigents who take direct appeals from convictions whereas post-conviction petitioners must first establish that their petition is not "frivolous" before counsel is appointed. For the reasons set forth below, we find defendants' constitutional challenge to section 122—2.1 to be without merit.

Defendants contend that section 122—2.1 is unconstitutional because it conflicts with Supreme Court Rule 651(c) and therefore violates the doctrine of separation of powers. Rule 651(c) is entitled "Appeals in Post-Conviction Proceedings" and provides:

"Record for Indigents; Appointment of Counsel. *Upon the timely filing of a notice of appeal in a post-conviction proceeding,* if the trial court determines that the petitioner is indigent, it shall order that a transcript of the record of the post-conviction proceedings, including a transcript of the evidence, if any, be prepared and filed with the clerk of the court to which the appeal is taken *and shall appoint counsel on appeal,* both without cost to the petitioner. The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, *that the attorney has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed pro se that are necessary for an adequate presentation of petitioner's contentions.*" (Emphasis added.) (107 Ill. 2d R. 651(c).)

Defendants assert that where the trial court dismisses an indigent petitioner's *pro se* petition without the appointment of counsel, the record on appeal fails to comply with Rule 651(c). Specifically, the defendants claim that section 122—2.1 conflicts with Rule 651(c) because Rule 651(c) requires that the record in the appellate court show that appointed counsel at the trial level in a post-conviction proceeding has: (1) consulted with petitioner to ascertain his contention of deprivations of constitutional rights, (2) examined the record of the proceedings at the trial, and (3) has made any necessary amendments to the *pro se* petition for an adequate presentation of the petitioner's contention.

The dissent erroneously states that Rule 651(c) allows an amendment of the post-conviction petition in the appellate court. There is nothing in Rule 651(c) that authorizes an amendment to the post-conviction petition in the appellate court or any other proceedings in the appellate court, to which the dissent alludes. Rule 651(c) specifically governs *appeals* from post-conviction proceedings. The rule explicitly conditions its applicability "[u]pon the timely filing of a notice of appeal in a post-conviction proceeding." (107 Ill. 2d R. 651(c).) Thus the putative conflict between section 122—2.1 and Rule 651(c) does not exist, because these provisions provide for appointment of counsel at different stages of the post-conviction process. Section 122—2.1 concerns an indigent post-conviction petitioner's rights at the trial level and Rule 651(c) governs at the appellate level. *E.g.*, *People v. Price* (1986), 144 Ill. App. 3d 949, 952; *People v. Brown* (1986), 142 Ill. App. 3d 139, 141-42; *People v. Baugh* (1985), 132 Ill. App. 3d 713, 715-16.

Additionally, it should be noted that section 122—2.1 does not contravene the separation of powers doctrine because, as our appellate court has held, the appoint-

ment of counsel at the hearing stage of the post-conviction proceeding must be considered to be a legislative matter. (See *People v. Ward* (1984), 124 Ill. App. 3d 974, 978.) The legislature, in enacting section 122—2.1, did not violate the exclusive power of this court to make rules regarding appeals because section 122—2.1 deals with post-conviction procedure at the trial level and Rule 651(c) governs appellate procedure. Moreover, in *People v. Ward* (1984), 124 Ill. App. 3d 974, 978, the court noted that "the right to counsel at post-conviction proceedings is a matter of legislative grace and favor which may be altered by the legislature at will." The legislature has the power to create laws which govern judicial practice, so long as they do not unduly infringe upon the inherent powers of the judiciary. (*People v. Cox* (1980), 82 Ill. 2d 268, 274.) We find no merit in defendants' argument that section 122—2.1 violates the separation of powers doctrine because no conflict exists between the Act and the rule, and the right to counsel at post-conviction proceedings, absent constitutional deprivations, is a matter of legislative grace. The provisions of Rule 651(c), which requires that the record on appeal disclose that counsel in the trial court took certain steps to assure an adequate presentation of defendant's claims, do not mandate that counsel be appointed in all post-conviction hearing proceedings. These requirements attach only after the trial court determines that counsel should be appointed.

We next consider defendants' due process challenge to section 122—2.1. Defendants assert that section 122—2.1 denies indigent petitioners a reasonably adequate opportunity to present their constitutional claims because *pro se* petitioners may not be capable of preparing a petition to survive this initial screening process. We do not agree.

Procedural due process contemplates indigents having a meaningful opportunity to be heard. (*People v. Taylor* (1979), 76 Ill. 2d 289.) "To determine what specific procedural safeguards fundamental fairness requires in the context of a particular proceeding, one must understand the nature of the proceeding." (76 Ill. 2d at 302.) Under section 122—2.1 and section 122—4 of the Act, an indigent petitioner is entitled to the appointment of counsel when the trial court determines that the claims are not frivolous and patently without merit.

Under the Post-Conviction Hearing Act, the petitioner must set forth the specific manner in which his rights were violated. (Ill. Rev. Stat. 1983, ch. 38, par. 122—2.1.) The petitioner does not have to construct legal arguments or cite to legal authority. Once the petitioner sets out allegations demonstrating a meritorious constitutional claim, he is entitled to have counsel represent him on the petition. "While it is obvious that counsel should be better able to more artfully draft a petition than an indigent petitioner unschooled in legal drafting, it is certainly not clear that an indigent petitioner could not present the gist of his claim so that the trial court could make an initial determination as to whether * * * the claim is frivolous." *People v. Baugh* (1985), 132 Ill. App. 3d 713, 717.

Additionally, the defendants contend that the appointment of counsel at the trial level is necessary for meaningful appellate review. To support this assertion, defendants claim that under most circumstances, the appellate court is presented with a poorly drafted petition and a blanket dismissal order, and appellate counsel cannot supplement the *pro se* petition with possibly meritorious claims.

The United States Supreme Court, however, has declared that fundamental fairness does not require that counsel be appointed for post-conviction petitioners. (*Ro-*

*driquez v. United States* (1969), 395 U.S. 327, 23 L. Ed. 2d 340, 89 S. Ct. 1715; *Johnson v. Avery* (1969), 393 U.S. 483, 21 L. Ed. 2d 718, 89 S. Ct. 747.) In *Rodriquez* the Court approved the Federal *habeas corpus* statute, which also requires an indigent petitioner to prepare his initial pleading without benefit of counsel. Moreover, in *Johnson v. Avery* the Court noted that in Federal courts "it is the practice to appoint counsel in post-conviction proceedings only after a petition for post-conviction relief passes initial judicial evaluation and the court has determined that issues are presented calling for an evidentiary hearing." *Johnson v. Avery* (1969), 393 U.S. 483, 487, 21 L. Ed. 2d 718, 722, 89 S. Ct. 747, 750.

The defendants assert that there are critical distinctions between section 122—2.1 of the Illinois act and the Federal *habeas corpus* act, such that due process requires the appointment of counsel under section 122—2.1. Specifically, the defendants argue that the Federal *habeas corpus* act provides for the filing of subsequent or successive applications for *habeas corpus* relief, whereas successive petitions are barred under the Illinois act. Additionally, the defendants note that under the Federal system, a district court may summarily dismiss a petition only after an examination of the petition, court files, and underlying record, while an Illinois circuit court may dismiss the case after only examining the petition itself. The Supreme Court's holding in *Johnson v. Avery* was not based on any peculiar provisions of the Federal *habeas corpus* act. The holding relates to both State and Federal proceedings. The Court stated: "It has not been held that there is any general obligation of the courts, *state or federal,* to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief." (Emphasis added.) 393 U.S. at 488, 21 L. Ed. 2d at 722, 89 S. Ct. at 750.

The assertion that the defendant is denied due process because under our statute the circuit court may dismiss the post-conviction petition after only examining the petition itself is without merit. Our statute provides that in considering the petition "the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding." (Ill. Rev. Stat. 1985, ch. 38, par. 122—2.1(c).) Section 122—2.1(a) provides that the order dismissing the petition as frivolous or patently without merit is a final judgment. As such it is appealable. If the trial court may consider the record of the proceedings in which the petitioner was convicted in dismissing the petition, then the court of review on appeal from the dismissal order may likewise consider that record in determining whether the dismissal order was proper. If the record reveals that the petition was not frivolous or patently without merit, the appellate court will protect the defendant's due process rights. Thus the procedure under our statute is quite similar to that provided for in the Federal system for *habeas corpus*. Under our statute, as in the Federal court, there is no obligation to appoint counsel for prisoners "who indicate, without more, that they wish to seek post-conviction relief." (*Johnson v. Avery*, 393 U.S. at 488, 21 L. Ed. 2d at 722, 89 S. Ct. at 750.) Also under our statute, as in Federal proceedings, in the absence of allegations raising a relevant issue, especially when a judgment is under collateral attack, the courts are not bound to search the entire record for some undisclosed but mitigating circumstances. See *Hilliard v. United States* (10th Cir. 1965), 345 F.2d 252.

The dissent acknowledges that under the Supreme Court holding in *Pennsylvania v. Finley* (1987), 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990, section 122—2.1 does not violate Federal due process rights. However,

the dissent argues that we should hold that this section of the statute violates the due process provisions of our State constitution. It is true that our State constitution may afford protection of certain rights not covered by the Federal Constitution. For instance, our State constitution grants certain privacy rights not addressed or afforded by the Federal Constitution (see Ill. Const. 1970, art. I, §6), but when the language of the provisions in the State Constitution and the Federal Constitution are practically identical, there should be some reason, other than the personal preferences of members of this court, for giving a different meaning to the two nearly identical provisions (*People v. Tisler* (1984), 103 Ill. 2d 226). This court has stated in order for similar provisions in the Illinois Constitution to be construed differently, "[w]e must find in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal Constitution, after which they are patterned." *Tisler*, 103 Ill. 2d at 246.

The constitutional debates do not reflect an intention by the delegates to the convention that our due process clause should receive a different construction than that placed on the Federal due process clause. (See generally 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1496-1501 (hereinafter cited as Proceedings).) As delegate Lennon stated:

> "The due process that we have in Illinois at the present time—well, the same language in the proposal, aside from the two areas of change I mentioned—is similar to the Federal Constitution." (3 Proceedings 1496 (statement of delegate Lennon).)

Moreover, delegate Lennon indicated that current interpretations of the due process clause of the Federal Con-

stitution were not intended to be incorporated by reference because the concept is applied on a factual case-by-case basis by stating:

"I think we all recognize that no matter what concept or doctrine you talk about, we have to live with what the supreme court interprets in particular cases." 3 Proceedings 1500-01.

We next consider defendants' contention that equal protection requires the appointment of counsel for indigent post-conviction petitioners. The defendants assert that section 122—2.1 violates equal protection guarantees because indigent post-conviction petitioners are not entitled to appointed counsel while indigent direct appellants are automatically entitled to assistance of counsel pursuant to Supreme Court Rule 607(a) (107 Ill. 2d R. 607(a)).

Specifically, the defendants submit that a post-conviction petition is substantially similar to a first direct appeal because it is the first time issues outside of the record are challenged. We find no merit to defendants' equal protection argument and adopt the analysis and holding in *People v. Baugh* (1985), 132 Ill. App. 3d 713, 716, in which the court concluded that there is a rational basis for treating the two situations differently. Additionally, we note that "there is no disparate treatment between indigent and nonindigent post-conviction petitioners as all are subject to dismissal regardless of whether they are represented by counsel if their petitions are found to be frivolous and patently without merit." *People v. Mason* (1986), 145 Ill. App. 3d 218, 226.

## II

Defendants next contend that section 122—2.1 of the Act is inseverable from section 122—8, which this court held unconstitutional in *People v. Joseph* (1986), 113 Ill. 2d 36. In *Joseph*, this court held that section 122—8 of

the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—8) was unconstitutional because it unduly infringed upon an inherently judicial function and was in conflict with Supreme Court Rule 21. Section 122—8 required a different judge to hear a post-conviction petition than the judge involved in the original trial. The defendants assert that the legislature intended sections 122—2.1 and 122—8 to be regarded as a single package and therefore section 122—2.1 should be held invalid.

In support of their contention that section 122—2.1 is invalid, defendants note that where portions of an act are held unconstitutional, the entire act is void unless the constitutional provisions are severable. (See *People ex rel. Peoria Civic Center Authority v. Vonachen* (1975), 62 Ill. 2d 179.) Defendants assert that the legislature intended sections 122—8 and 122—2.1 to be inseverable because both sections were the primary revisions made to the Post-Conviction Hearing Act by Public Act 83—942. (1983 Ill. Laws 6200.) Moreover, the defendants claim that when the Governor amendatorily vetoed Senate Bill 151, eliminating section 122—8, the House refused to accept the Governor's recommended change and reenacted the bill as originally passed by the General Assembly. Thus, the defendants contend that the General Assembly's reenactment of section 122—8, after the Governor's amendatory veto striking section 122—8, illustrates the legislature's intent not to enact section 122—2.1 without section 122—8. Additionally, the defendants maintain that the legislative debates indicate that section 122—8 was added as a procedural safeguard to section 122—2.1 and therefore the two provisions are inseverable. *Joseph*, 113 Ill. 2d at 49 (Simon, J., dissenting).

In determining whether an unconstitutional provision of a statute is severable from the remainder, this court, in *Livingston v. Ogilvie* (1969), 43 Ill. 2d 9, 23, quoting

the test established in *People ex rel. Adamowski v. Wilson* (1960), 20 Ill. 2d 568, 582, stated: " 'If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section unconstitutional unless it can be said that the General Assembly would not have passed the statute with the invalid portion eliminated.' " See also *City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 490.

In the case at bar, section 122—2.1 does not refer to section 122—8 and is separate and distinct from section 122—8. (*People v. Garvin* (1987), 152 Ill. App. 3d 438, 445; *People v. Farmer* (1986), 148 Ill. App. 3d 723, 728.) Moreover, section 122—2.1 is capable of being executed wholly independent of section 122—8. The defendants, however, assert that the actions of the General Assembly, in response to the Governor's amendatory veto eliminating section 122—8, evidences an intent that the sections be considered interdependent.

In *People v. Farmer* (1986), 148 Ill. App. 3d 723, the appellate court specifically rejected an identical argument. We agree with the analysis of the court in *Farmer* that section 122—8 is not an indispensable component part of the statutory scheme. The *Farmer* court concluded:

"[W]hile the Illinois House of Representatives acted to pass Public Act 83—942 only when both sections 122—2.1 and 122—8 were included, we cannot conclude from this that the General Assembly would not have passed the statute without section 122—8. The Senate apparently saw nothing wrong with the bill as amended, voting to accept the Governor's recommended changes. It was only when the House decided not to accept the bill as amended that the Senate acquiesced. From this we refuse to read an intent that the General Assembly would not have passed section 122—2.1 without section 122—8. *** We

perceive the Act as passed to be the result of political compromise instead." (*People v. Farmer* (1986), 148 Ill. App. 3d 723, 728.)

See also *People v. Peeples* (1987), 153 Ill. App. 3d 1050, 1055.

The defendants, however, maintain that the legislative debates indicate that section 122—8 was added to counter opponents of section 122—2.1 who perceived section 122—2.1 as eliminating certain procedural protections. Specifically, the defendants rely on statements by the sponsors of the bill that the same judge who presided over the trial could not be impartial when it came to considering whether a post-conviction petition was frivolous. (83d Ill. Gen. Assem., House Proceedings, Nov. 1, 1983, at 7 (statements of Representative Cullerton).) The statements, however, do not necessarily evidence a legislative intent to refuse to enact 122—2.1 without 122—8. Legislative debates surrounding the amendment clearly focused on the benefits of section 122—2.1, which avoided the substantial expense of appointing a lawyer to all indigent post-conviction petitioners. (83d Ill. Gen. Assem., House Proceedings, Nov. 1, 1983, at 10 (statements of Representative Johnson).) Moreover, the sponsor in the House, Representative Johnson, stated that he did not have "strong feelings about the Amendment" or "the Governor's veto on it." (83d Ill. Gen. Assem., House Proceedings, Nov. 1, 1983, at 10.) While the testimony of a sponsor of a bill is not controlling, courts give some consideration to such statements. (2A A. Sutherland, Statutory Construction §48.15, at 337 (1984).) Thus, the legislative debates surrounding the amendment do not indicate that the General Assembly would not have passed the statute without section 122—8. Accordingly, we conclude that section 122—2.1 is severable from section 122—8 and therefore is valid.

III

We next consider defendants' contention that the circuit court erred in failing to enter a written order containing specific factual findings and legal conclusions for the dismissal on the grounds that the petition was frivolous. Section 122—2.1 of the Act provides that "[i]f the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision." (Ill. Rev. Stat. 1985, ch. 38, par. 122—2.1(a).) Defendants maintain that the written order requirement in section 122—2.1, specifying findings of fact and conclusions of law, should be construed as mandatory.

This court has stated that whether a statutory provision is interpreted as mandatory or directory depends upon the intent of the drafters. (*People v. Youngbey* (1980), 82 Ill. 2d 556.) Generally, the word "shall" is indicative of a mandatory intent; however, such a construction is not absolute and intent can also be determined from the purpose and context of the provision. (*Youngbey*, 82 Ill. 2d 556.) The defendants assert that the purpose of the written order requirement, specifying findings of fact and conclusions of law, is for the benefit of the reviewing court. Although we deem it advisable that the trial court state its reasons for dismissal, we do not conclude it is mandatory.

In the instant case, the use of the term "shall" does not refer to the contents of the court's order of dismissal itself, but rather to the court's duty to dismiss a petition if it is frivolous or patently without merit. (See *People v. Wilson* (1986), 146 Ill. App. 3d 567; *People v. Cox* (1985), 136 Ill. App. 3d 623.) The statute merely directs that the court's written order specify its findings of fact or conclusions of law in order to facilitate appellate review of

the court's dismissal. "Furthermore, we note that the section contains no expression that the proceedings should be held void if the trial court fails to specify its findings, nor would such a failure injure a defendant's rights since the dismissal of a post-conviction petition is subject to review." *Wilson*, 146 Ill. App. 3d at 579.

Additionally, it should be noted that our conclusion that the statutory provision in question here is directory as to the entry of the written order and its contents rather than mandatory comports with this court's decision in *People v. Davis* (1982), 93 Ill. 2d 155. In *Davis*, this court concluded that the requirement that the court "shall" state its reasons for imposing a particular sentence under section 5—4—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—4—1(c)) was directory. This court reasoned that the pronouncement of sentence was at the heart of the judicial function and therefore the legislature was without the authority to dictate its content. (*Davis*, 93 Ill. 2d 155.) Similarly, a mandatory interpretation of section 122—2.1 as to the entry of a written order and its contents would violate the doctrine of separation of powers. (See *People v. Price* (1986), 144 Ill. App. 3d 949.) Accordingly, the failure to specify the findings of fact and conclusions of law in the written order does not require reversal of the dismissal order.

Defendants Singleton's and Mason's final contention is that the trial courts failed to enter the orders of dismissal within 30 days and that section 122—2.1 requires that such orders be entered within 30 days. Section 122—2.1 authorizes summary dismissals of post-conviction petitions and provides in pertinent part:

"*Within 30 days* after the filing and docketing of each petition, the court *shall* examine such petition and enter an order thereon pursuant to this Section. If the court determines the petition is frivolous or is patently without

merit, it shall dismiss the petition in a written order \*\*\*. Such order of dismissal is a final judgment and shall be served upon the petitioner by certified mail within 10 days of its entry." (Emphasis added.) (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—2.1(a).)

In the present case, Singleton filed his petition on February 2, 1984; however, the trial court did not enter the dismissal order until October 19, 1984. Mason's petition was filed June 21, 1984, and the dismissal order was entered October 19, 1984. Clearly, these orders were entered well past the specified 30-day period. The defendants maintain that after 30 days the petitions could no longer be dismissed pursuant to section 122—2.1, and that the courts should have proceeded in accordance with sections 122—4 through 122—6 (Ill. Rev. Stat. 1985, ch. 38, pars. 122—4 through 122—6).

The State, however, asserts that the 30-day requirement set forth in section 122—2.1 is directory and, therefore, the trial courts' dismissals of the petitions after 30 days were still valid. In support of its contention, the State relies on this court's decision in *People v. Flores* (1984), 104 Ill. 2d 40. In *Flores*, this court interpreted "shall" as directory in a statute which required the trial court to wait two consecutive days before proceedings with the trial where the defendant had failed to appear in court after the trial commenced. The State submits that this court's concern in *Flores* with disruptions in the court's docket is present in the cases at bar because enforcement of the 30-day requirement would similarly disrupt the trial court's docket. We disagree; a post-conviction petitioner is not able to disrupt the court docket under section 122—2.1 by merely filing a post-conviction petition.

As previously noted, in order to determine whether a provision contained in a statute is directory or mandatory the court must ascertain the legislative intent of the

drafters. (*People v. Youngbey* (1980), 82 Ill. 2d 556.) If the language of a statute is clear on its face, it should be given effect without resort to principles of statutory construction. (*People v. Singleton* (1984), 103 Ill. 2d 339, 341.) In the present cases, the language in section 122—2.1(a) clearly states that the court "shall" examine postconviction petitions and enter an order within 30 days after they have been filed and docketed. Moreover, the word "shall" is generally indicative of a mandatory intent. *Youngbey*, 82 Ill. 2d at 562.

Similarly, mandatory intent is indicated where a statute prescribes the result that will occur if the specified procedure is not followed. (*People v. Brown* (1986), 142 Ill. App. 3d 139.) Section 122—2.1(b) prescribes the result when a trial court fails to dismiss a petition within 30 days as follows:

> "If the petition is not dismissed pursuant to this section, the court shall order the petition to be docketed for further consideration in accordance with Sections 122—4 through 122—6." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—2.1(b).)

We conclude that the 30-day rule was intended to be mandatory.

The dissent characterizes our construction of the word "shall" as "chameleonic." There is no inconsistency in our interpretation of the word "shall" as it is used in the two places in the section of the Act we are now considering. This opinion holds that the court *shall* examine the petition and enter an order within 30 days. This opinion also holds that if the petition is found to be frivolous and patently without merit, the court *shall* dismiss the petition. In both cases the word "shall" is construed, in this opinion, to be mandatory. It is not mandatory, however, that the order dismissing the petition be written, or that it specify findings of fact and conclusions of law. As noted above, a mandatory requirement

as to the content of the order would violate the doctrine of separation of powers. See *People v. Davis* (1982), 93 Ill. 2d 155; *People v. Price* (1986), 144 Ill. App. 3d 949.

Because we find the 30-day rule of section 122—2.1 to be mandatory and not discretionary, the trial courts' noncompliance with the Act renders the dismissal void. For the foregoing reasons, the judgments of the appellate court and of the circuit court of Cook County in cause No. 63716 and No. 63384 are reversed, and the causes are remanded to the circuit court. On remand, the circuit court is directed to order said defendants' petitions docketed for further consideration in accordance with sections 122—4 through 122—6 of the Code of Criminal Procedure of 1963. The appellate court judgment in cause No. 63274, affirming the circuit court order dismissing defendant Porter's post-conviction petition as being patently without merit, is hereby affirmed.

*No. 63274 — Judgment affirmed;*
*Nos. 63384 & 63716 — Judgments reversed*
*and remanded with directions.*

JUSTICE SIMON, dissenting:

Although I am aware that under the Supreme Court's recent interpretation of due process under the Federal Constitution, section 122—2.1 does not violate defendants' Federal due process rights (*Pennsylvania v. Finley* (1987), 481 U.S. 551, 556-57, 95 L. Ed. 2d 539, 547, 107 S. Ct. 1990, 1994), I believe that denying assistance of counsel to indigent post-conviction petitioners violates due process rights established in article I, section 2, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §2). As judges of the supreme court of this State, we have an independent obligation to apply our State constitution to defendant's claims, especially when Supreme Court interpretations filed after the adoption of our 1970 Constitution are looked to as precedents to diminish

those individual rights that defendants' possessed in 1970 when the Illinois Constitution was adopted. Therefore, I dissent from the majority opinion, which fails to discuss whether section 122—2.1 comports with our State constitution.

Over 10 years ago, Justice Brennan pointed out that Supreme Court decisions provide minimal safeguards to individual rights and encouraged State courts to provide the double protection of citizens' rights inherent in our Federal system. (Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489, 502-03 (1977).) I agree with Justice Brennan that it is our duty to protect vigilantly the rights of Illinois citizens, particularly when Federal protection of rights is diminished. Commentators have chronicled how our sister State courts in some 375 cases since 1970 have relied on their State constitutions to vindicate rights not protected by Supreme Court interpretations of the United States Constitution. (See Collins & Galie, *Upholding Rights Left Unprotected by U.S. Supreme Court Decisions*, Nat'l L.J., November 9, 1987, at 32; Collins & Galie, *Special Section on State Constitutional Law*, Nat'l L.J., September 29, 1986 (listing cases).) I believe it is time for this court to join our sister State courts that have "responded with marvelous enthusiasm to many not-so-subtle invitations to fill the constitutional gaps left by the decisions of the Supreme Court majority." (Brennan, *The Bill of Rights and the States: The Revival of State Constitutions as Guardians of Individual Rights*, 61 N.Y.U. L. Rev. 535, 549 (1986).) Therefore, I believe the majority should have addressed defendant's State due process claim.

In assessing the scope of due process rights preserved by our State constitution, this court should begin with an analysis of the text and meaning of article I, section 2:

"No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." (Ill. Const. 1970, art. I, §2.)

To understand what the framers meant by due process, it is instructive to examine both State and Federal interpretations of due process prior to 1970. (See 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1496-97 (presenting majority view on section 2, Mr. A. Lennon noted that "[t]he due process that we have in Illinois at the present time *** is similar to the Federal Constitution" and cited several Illinois cases that in a very general way helped define the concept).) As is the case in construing statutes (see *Illinois Bell Telephone Co. v. Allphin* (1982), 93 Ill. 2d 241, 249 (construing Messages Tax Act in accordance with Federal constitutional law in effect when statute was enacted); see also *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431 (concluding that Illinois long-arm jurisdiction does not vacillate with Supreme Court's due process interpretations)), the only Federal constitutional interpretations that should impact upon our interpretation of the State Constitution are those existing at the time the Illinois Constitution was adopted. Thus, to determine whether section 122—2.1 violates State due process, I begin with this court's due process decisions interpreting the then-existing post-conviction act.

Prior to the enactment of section 122—2.1 in 1983, the post-conviction statute provided that if appointment of counsel was requested and the court determined that the defendant had no means to procure counsel the court was to appoint counsel for the defendant. (Ill. Rev. Stat. 1981, ch. 38, par. 122—4.) In cases in which the trial court failed to appoint counsel, this court remanded to the trial court to appoint counsel, holding that such failure " 'thwart[ed] the legislative purpose and creat[ed] due process problems.' " (*People v. Butler* (1968), 40 Ill.

2d 386, 388, quoting *People v. Polansky* (1968), 39 Ill. 2d 84, 87.) Though the court provided little analysis in *Polansky*, it nonetheless made clear that due process requirements were not met in post-conviction proceedings in which the trial court failed to provide indigent defendants with counsel. *Polansky*, 39 Ill. 2d at 87.

It is also important to note that at the time the Illinois Constitution was adopted the United States Supreme Court's interpretation of Federal due process rights was not inconsistent with the *Polansky* court's understanding of due process. The majority relies on *dicta* from *Johnson v. Avery* (1969), 393 U.S. 483, 488, 21 L. Ed. 2d 718, 722, 89 S. Ct. 747, 750, to suggest that the Supreme Court's decisions held that due process did not require appointment of counsel under the Illinois post-conviction statute (122 Ill. 2d at 75). The remoteness of this *dicta* to the holding of *Johnson* is apparent when one considers that the *Johnson* Court invalidated a State regulation that limited petitioner's access to Federal *habeas corpus*. Specifically, the Court held that unless the State provides reasonable alternative assistance in preparing petitions for post-conviction relief, it could not validly enforce a prison regulation that prevented inmates from assisting other prisoners.

Also, the majority's reliance on *Rodriguez v. United States* (1969), 395 U.S. 327, 23 L. Ed. 2d 340, 89 S. Ct. 1715, is misplaced, for *Rodriguez* neither "declared that fundamental fairness does not require that counsel be appointed for post-conviction petitioners" nor "approved the Federal *habeas corpus* statute." (122 Ill. 2d at 74-75.) In fact, *Rodriguez* reversed and remanded a denial of *habeas corpus* because the district court's denial was based on the petitioner's failure to specify the points he would raise if his right to appeal were reinstated. (*Rodriguez*, 395 U.S. at 330, 23 L. Ed. 2d at 344, 89 S. Ct. at 1717.) Ironically, the discussion in *Rodriguez* that is

most relevant to the issue in these cases was quoted by the appellate court in support of its determination that the operation of section 122—2.1:

> "deprives an indigent prisoner of meaningful access to post-conviction relief. 'Those whose education has been limited and those *** who lack facility in the English language might have grave difficulty in making even a summary statement of points to be raised [in a post-conviction petition]. Moreover, they may not even be aware of errors which occurred at trial. Thus they would be deprived of their only chance to [litigate a claim pursuant to the Act] even though they have never had the assistance of counsel in preparing one. *Rodriguez v. United States* (1969), 395 U.S. 327, 330, 23 L. Ed. 2d 340, 344, 89 S. Ct. 1715, 1717." (*People v. Wilson* (1986), 146 Ill. App. 3d 567, 583.)

In sum, I believe the majority errs when it cites cases the Supreme Court decided prior to the adoption of the Illinois Constitution to support its conclusion that an indigent petitioner's due process rights do not ensure meaningful, adequate, or effective access to post-conviction relief under our statute.

To the majority's credit, the opinion recognizes the keystone in this due process analysis—examining the nature of the post-conviction proceedings in order to ascertain what procedural safeguards fundamental fairness demands. (122 Ill. 2d at 74.) Unfortunately, the majority overlooks this court's previous comprehensive discussion of the nature and function of the Post-Conviction Hearing Act. (See *People v. Slaughter* (1968), 39 Ill. 2d 278, 283-85.) In *Slaughter*, Justice Schaefer writing for the court observed that the Act was enacted in direct response to *Marino v. Ragen* (1947), 332 U.S. 561, 92 L. Ed. 170, 68 S. Ct. 240, a case in which the Supreme Court criticized Illinois' inadequate collateral-remedy scheme. Justice Rutledge's concurring opinion cut to the heart of the matter: "If the federal guarantee of due

process in a criminal trial is to have real significance in Illinois, it is imperative that men convicted in violation of their constitutional rights have an adequate opportunity to be heard in court." *Marino*, 332 U.S. at 570, 92 L. Ed. at 176, 68 S. Ct. at 245.

In describing how the post-conviction statute put an end to what Justice Rutledge described as the "Illinois merry-go-round" of post-conviction remedies, this court stated:

> "The Post-Conviction Hearing Act provides that counsel shall be appointed to represent indigent prisoners who request counsel, and it also provides that a petition may be amended or withdrawn. (Ill. Rev. Stat. 1967, chap. 38, pars. 122—4, 122—5.) These provisions were included because it was anticipated that most of the petitions under the Act would be filed *pro se* by prisoners who had not had the aid of counsel in their preparation. To the end that the complaints of a prisoner with respect to the validity of his conviction might be adequately presented, the statute contemplated that the attorney appointed to represent an indigent petitioner would consult with him either by mail or in person, ascertain his alleged grievances, examine the record of the proceedings at the trial and then amend the petition that had been filed *pro se*, so that it would adequately present the prisoner's constitutional contentions. The statute can not perform its function unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form and presents them to the court." (*Slaughter*, 39 Ill. 2d at 284-85.)

In short, this court found that providing post-conviction petitioners with counsel was essential to ensure that defendants had an adequate opportunity to present their constitutional claims. The inescapable implication was that to deny defendants this access would violate indigent prisoner's due process rights.

Nevertheless, the majority rejects defendants' due process arguments by discounting the difficulties indigent

defendants face in alleging facts sufficient to state a constitutional claim. (122 Ill. 2d at 74.) That a petitioner does not have to "construct legal arguments or cite to legal authority" (122 Ill. 2d at 74) hardly opens the courts' doors to petitioners, often illiterate, who have only the vaguest notion of what their constitutional rights are. As the appellate court observed in *Mason*, "[t]he difficult task *** is to understand what one's rights are before it is possible to set out in a petition the facts which support them, particularly so since the petitioner has only one opportunity to set forth his claims." 145 Ill. App. 3d at 225.

Based on what I have seen as a member of this court, the majority's faith in the constitutional knowledge of indigent petitioners is greater than mine. Every term we review numerous *pro se* prisoner petitions for leave to appeal, and I cannot believe that my colleagues have not noticed how difficult practically every one of those *pro se* petitions is to understand. Of course, we are aided in our review by the mandatory attachment of the appellate court opinion. (107 Ill. 2d R. 315(b)(5).) But under section 122—2.1, a judge who has neither knowledge of the case nor court records or an appellate court opinion may summarily dismiss the post-conviction petition after looking only at the petition itself. In my view, application of section 122—2.1 turns our post-conviction proceedings into an empty formality for indigent petitioners. Intended to stop the "Illinois merry-go-round," the post-conviction statute has been transformed into a ride to nowhere for indigent petitioners. I think it is most unfortunate that the majority allows petitioners' due process rights to meaningful access to the courts to be dependent on a trial judge's ability to process petitions within 30 days.

In addition, the relationship between the post-conviction statute and our Rule 651(c) presents an anamoly. By upholding section 122—2.1, the majority creates a scheme in which the circuit court may dismiss an indi-

gent petitioner without counsel under section 122—2.1, but as long as that petitioner files a timely notice of appeal, the appellate court must under Rule 651(c) appoint counsel and allow "any amendments to the petition filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." (107 Ill. 2d R. 651(c).) To shift the locus of meaningful post-conviction representation from the circuit court to the appellate court under Rule 651 strikes me as quite odd, particularly in view of this court's previous admonition that:

> "the purpose underlying Rule 651(c) is not merely formal. It is to ensure that all indigents are provided proper representation when presenting claims of constitutional deprivation under the Post-Conviction Hearing Act." (*People v. Brown* (1972), 52 Ill. 2d 227, 230.)

Because Rule 651(c) safeguards indigent petitioners by granting them counsel and allowing amendment of the post-conviction petitions in the appellate court even when the trial court denied them the privilege of counsel and dismissed their petitions, the operation of section 122—2.1 is uneconomical. It is also unfair to the extent it may lay yet another procedural trap in which indigent defendants may lose their rights to challenge constitutional deficiencies in the prior proceedings.

Further, though I agree with the majority that section 122—2.1 does not threaten the separation of powers for the same reasons stated in my dissent to *People v. Joseph* (1986), 113 Ill. 2d 36, I think it is most curious that the majority opinion fails to apply or even acknowledge the separation of powers analysis set forth in *Joseph*. Instead of clarifying and analyzing "which legislative acts intrude upon a 'fundamentally judicial prerogative' and which merely involve '*peripheral* effect on judicial administration'" (emphasis in original) (*Joseph*, 113 Ill. 2d at 50 (Simon, J., dissenting)), the majority cites an appellate court decision to support its conclusory assertion that the

appointment of counsel is a legislative matter. (122 Ill. 2d at 72-73.) I cannot understand how on the one hand this court invalidates the legislature's requirement that the original trial judge cannot consider post-conviction petitions (Ill. Rev. Stat. 1985, ch. 38, par. 122—8), holding that such legislation encroaches on the area of court administration (*Joseph*, 113 Ill. 2d at 44), while on the other hand the majority approves the legislature's decision to limit litigants' rights to effective access to the courts. The court's rulings in *Joseph* and here force litigants to play a shell game whenever they make separation of powers arguments. Hopefully, the conspicuous absence of citation to *Joseph* signals a departure from both *Joseph* and "the road to a government of 'rigidly separated compartments' " (*Joseph*, 113 Ill. 2d at 49 (Simon, J., dissenting)).

Finally, I am baffled by the majority's chameleonic interpretation of the word "shall" in section 122—2.1. (122 Ill. 2d at 81-83.) I agree that the "shall" in the 30-day requirement is mandatory, but cannot understand why "shall" in the written order provision is not similarly mandatory. The majority's citation of *People v. Youngbey* (1980), 82 Ill. 2d 556, to support both a mandatory and a directory interpretation is particularly perplexing. At the very least one would expect the legislature intended to provide an explanation to those indigent petitioners whose access to the court is derogated by section 122—2.1. Thus, even if I did not believe section 122—2.1 violates defendants due process rights, I would reverse and remand the circuit court's dismissal of Porter's post-conviction petition because the circuit judge failed to enter a written order specifying his reasoning in dismissing Porter's petition.

For the foregoing reasons, I respectfully dissent.