THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOE MARKS, Defendant-Appellant.

Third District   No. 3—91—0746

Opinion filed December 3, 1992.

Robert S. Burke, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and J. Paul Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant Joe Marks was charged by indictment with one count of theft by deception and one count of conspiracy to commit theft. Defendant was tried *in absentia* and the jury found him not guilty of theft and guilty of conspiracy. The trial court sentenced defendant to an extended term of six years' imprisonment and ordered that defendant and a codefendant, Lena Wilson, should "jointly and severally" pay restitution in the amount of $93,000. Defendant's post-conviction petition was dismissed as frivolous and patently without merit, and defendant appeals from that order. We reverse and remand.

Given our disposition of this cause, we will only recount those facts necessary to an understanding of the case. In June of 1986, Jeane Dunton began to avail herself of the services of codefendant Wilson, a so-called psychic. During the next 18 months, Dunton met with Wilson three to four times per week. Dunton gave various items of personal property to Wilson to increase her "power" and lift the "curse" which purportedly threatened the well-being of Dunton, her daughters and her grandson. These items included jewelry, clothing, a Cadillac automobile and a $1,200 silk suit.

Dunton testified that the defendant was Wilson's common law husband. While the defendant never asked Dunton to give him any items, the silk suit was tailored to fit the defendant and he picked it up from the store when it was finished. Defendant also drove Dunton and Wilson from Peoria to Park Ridge, Illinois, where Dunton purchased a Cadillac. Wilson told Dunton that the devil had gotten into defendant and that the devil would be transferred from the defendant to the car. Dunton paid $15,000 as a down payment and financed the remaining $19,000 cost of the Cadillac. The defendant was present when the financing was arranged, and he answered some of Wilson's questions about the financing agreement.

In January of 1988, the police approached Dunton and convinced her that Wilson was not a psychic. Dunton agreed to help in the investigation of Wilson, and 11 telephone conversations between Dunton and Wilson were taped between February 1 and February 8, 1988. During one of these conversations, Dunton falsely claimed to have inherited a large sum of money. Wilson told Dunton to bring $36,000 in cash and meet her in the parking lot of a restaurant. After Wilson failed to appear for the meeting, the defendant called Dunton at her home. The defendant asked to meet with Dunton, explaining that "what was in me, went in [Wilson]." The defendant said he would have Wilson call Dunton, and told Dunton, "you gotta [*sic*] stick behind us. We have you."

The defendant was subsequently arrested, and he and Wilson were charged with theft by deception and conspiracy to commit theft. The theft charge was based on the various items of property, including the Cadillac, allegedly given to the defendants by Dunton between June of 1986 and February of 1988. The conspiracy count was based on the meeting which was to have occurred in the restaurant parking lot. As indicated earlier, the defendant was tried *in absentia* and was found not guilty of theft and guilty of conspiracy. Defendant was sentenced to a six-year extended term of imprisonment and was ordered to pay $93,000 in restitution. Defense counsel did not file any posttrial motions attacking the judgment or sentence, nor did he file a notice of appeal. On August 21, 1991, defendant filed a *pro se* petition for post-conviction relief pursuant to the Post-Conviction Hearing Act (the Act) (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*). The petition was dismissed by the trial court as frivolous and patently without merit (see Ill. Rev. Stat. 1987, ch. 38, par. 122—2.1(a)(2)).

■■ The Post-Conviction Hearing Act provides a remedy to defendants who claim that substantial violations of their constitutional rights occurred during trial. (*People v. Eddmonds* (1991), 143 Ill. 2d 501, 578 N.E.2d 952.) A post-conviction proceeding is a collateral attack upon a final judgment, and its purpose is not to determine guilt or innocence, but to inquire into constitutional issues which have not been previously adjudicated. (*Eddmonds*, 143 Ill. 2d 501, 578 N.E.2d 952.) Although the defendant ultimately bears the burden of proving that a substantial constitutional violation occurred at trial (*Eddmonds*, 143 Ill. 2d 501, 578 N.E.2d 952), to survive dismissal at the initial stage of a post-conviction proceeding, a petition need only present the gist of a meritorious constitutional claim (*People v. Jones* (1988), 168 Ill. App. 3d 925, 522 N.E.2d 1325; *People v. Dredge* (1986), 148 Ill. App. 3d 911, 500 N.E.2d 445). While the *pro se* petitioner does not

have to construct legal arguments or cite to legal authority, he must set forth the specific manner in which his rights were violated. (*People v. Porter* (1988), 122 Ill. 2d 64, 521 N.E.2d 1158.) In the absence of allegations raising a relevant issue, the court is not bound to search the entire record for some undisclosed but mitigating circumstances. (*Porter*, 122 Ill. 2d 64, 521 N.E.2d 1158.) The dismissal of a post-conviction petition will not be reversed absent an abuse of discretion by the trial court. *People v. Dean* (1992), 226 Ill. App. 3d 465, 589 N.E.2d 888; *People v. Jackson* (1991), 213 Ill. App. 3d 806, 572 N.E.2d 475.

■ An examination of defendant's petition and accompanying memorandum of law reveals that defendant alleged three constitutional violations. First, defendant claimed that his trial counsel was ineffective for failing to file a post-trial motion or notice of appeal. The only issue, however, that defendant contended should have been raised by counsel was that he was not eligible for an extended-term sentence. This issue is without merit. The transcript of the sentencing hearing clearly shows that in imposing an extended term the trial court relied on the fact that the victim was 60 years of age or older at the time the offense was committed. This was a proper factor upon which to base an extended-term sentence. Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(4)(ii).

■ The defendant's petition next alleged that he was denied due process of law because: (1) he was not admonished that he could be tried and sentenced *in absentia*; (2) he was not informed of the possibility of an extended-term sentence; and (3) he was improperly sentenced to an extended term. As discussed above, the extended-term sentence was based on a proper aggravating factor. With regard to the failure to admonish defendant about a trial *in absentia*, the record shows that the defendant was so advised at his arraignment. Moreover, where a defendant has been admonished that trial may proceed in his absence, he need not be specifically told that sentencing may also occur in his absence, since a sentencing hearing is part of the trial. (*People v. Smith* (1990), 202 Ill. App. 3d 606, 560 N.E.2d 399.) In addition, a trial court has no obligation to inform a defendant of the possibility of an extended-term sentence unless the defendant is entering a guilty plea. (See Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(b); *People v. Burcham* (1991), 208 Ill. App. 3d 939, 566 N.E.2d 832.) Defendant's contention that he was denied due process is patently without merit.

■ The third alleged constitutional violation raised by defendant in his post-conviction petition was that his appellate counsel was inef-

fective in failing to advise him that his trial counsel was ineffective and in failing to assist him in preparing his post-conviction petition. This claim fails for two reasons. First, the only specific allegation of ineffectiveness was once again the erroneous argument that defendant was not eligible for an extended-term sentence. Second, the appellate counsel that defendant claimed was ineffective, Peter Carusona, was not assigned to this case. Carusona represented the defendant on appeal of the denial of his motion to withdraw a guilty plea in case number 88—CF—332. In that case, defendant was charged with violating the bail bond which had been posted in the instant case. Although defendant apparently believed that Carusona was obligated to assist him with the case at bar, we find no basis for imposing such a duty. A bail bond violation occurs even where the underlying charge is later declared invalid. (*People v. Tompkins* (1975), 26 Ill. App. 3d 322, 325 N.E.2d 83; *People v. Arnone* (1973), 15 Ill. App. 3d 278, 304 N.E.2d 95.) There was no need, therefore, for Carusona to search the record and determine the validity of defendant's underlying conviction for conspiracy. We find no merit to defendant's claim.

Finally, defendant's brief on appeal raises several issues in support of his claim of ineffective assistance of trial counsel, including the sufficiency of the evidence, improper jury instructions, misleading closing argument by the prosecutor, the trial court's reliance on improper aggravating factors in sentencing, and improperly ordering the defendant to make restitution for a crime of which he was acquitted. Indeed, virtually defendant's entire brief is devoted to these issues. These claims were not raised in defendant's post-conviction petition, however, and "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." (Ill. Rev. Stat. 1987, ch. 38, par. 122—3; see *People v. Free* (1988), 122 Ill. 2d 367, 376, 522 N.E.2d 1184, 1188 ("Consistent with [section 122—3], this court has held that a ruling on a post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition"); *People v. Heirens* (1954), 4 Ill. 2d 131, 122 N.E.2d 231 (reviewing court will not consider claims of post-conviction petitioner that were not presented to trial court).) The waiver rule, however, is not an absolute bar to procedurally defaulted claims, and where fundamental fairness requires, the waiver rule will not be applied in post-conviction proceedings. *People v. Owens* (1989), 129 Ill. 2d 303, 544 N.E.2d 276.

■ We believe that it would be fundamentally unfair to apply the waiver rule to this case. The defendant's post-conviction petition alleged that his right to direct appeal was lost due to his trial counsel's

incompetence. It appears that such an allegation, standing alone, may be sufficient to state the gist of a meritorious constitutional claim. (See *People v. Moore* (1990), 133 Ill. 2d 331, 549 N.E.2d 1257 (where a post-conviction proceeding is used to remedy a lost right of appeal, no showing of prejudice is required where counsel failed to perfect defendant's appeal, as prejudice is presumed).) In addition, we find that the issues that the defendant raises for the first time on appeal are sufficient to state the gist of a constitutional claim. In particular, we note that the conspiracy offense of which defendant was convicted resulted in no loss of money or property by the victim, and yet defendant was ordered to pay restitution. The restitution order appears to have been based on the charge of theft by deception, a charge of which the defendant was acquitted by the jury. We therefore reverse the circuit court's order dismissing defendant's petition and remand this cause for appointment of counsel and for further proceedings in accordance with sections 122—4 through 122—6 of the Act. We specifically note that our decision is not intended to reflect negatively on the abilities of the trial court. We fully understand that a trial judge cannot rule upon issues which were never presented to him.

For the reasons stated above, the judgment of the circuit court is reversed and remanded.

Reversed and remanded.

BARRY, P.J., and GORMAN, J., concur.