2020 IL App (1st) 181479-U

FIFTH DIVISION
Order filed: August 14, 2020

No. 1-18-1479

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 08 CR 6105 |
| | ) | |
| JULIO VIZCARRA, | ) | Honorable |
| | ) | William Raines, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's first-stage summary dismissal of the defendant's *pro se* postconviction petition is reversed where the defendant stated a gist of a constitutional claim for ineffective assistance of counsel and the cause is remanded for second-stage postconviction proceedings.

¶ 2    The defendant, Julio Vizcarra, appeals from the first-stage summary dismissal of his *pro se* postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 122-1 *et seq*. (West 2016)). On appeal, the defendant contends that the trial court erred in dismissing his petition because his claim had an arguable basis in law and fact. Specifically, the defendant

maintains that his trial counsel was ineffective for failing to inform him that he could face deportation prior to entering into a guilty plea. For the reasons that follow, we reverse.

¶ 3    The defendant, along with his co-defendant, Fernando Ventura, was charged by indictment with, *inter alia*, multiple counts of attempted first degree murder in relation to the March 13, 2008 robbery of a Chicago police officer's home.

¶ 4    On September 9, 2010, the defendant entered into a negotiated guilty plea to one count of attempted murder in exchange for a term of 16 years' imprisonment and dismissal of the remaining charges against him.

¶ 5    The record reflects that, as a factual basis for the plea, Ventura would have testified that he and the defendant agreed to rob Officer Julian Gamboa's home, intending to steal the television and laptops that were inside. On the night in question, Ventura drove to Officer Gamboa's home with the defendant following him in a separate vehicle. Ventura left the scene and, shortly thereafter, received a phone call from the defendant stating that, while he was inside the house, he shot Officer Gamboa.

¶ 6    The court accepted the factual basis and advised the defendant that he was pleading guilty to attempted first degree murder, a Class X felony with a sentencing range of 6 to 30 years' imprisonment at 85%, and that his sentence would be followed by a three-year period of mandatory supervised release. The defendant stated that he understood these sentencing provisions. The court admonished the defendant that, by pleading guilty and waiving his right to a jury trial, he was relinquishing his rights to: call his own witnesses to testify, cross-examine State's witnesses, testify on his own behalf, and remain silent. The defendant acknowledged that he understood his rights and that he had not been forced into pleading guilty.

¶ 7    The defendant told the court that he spoke to his trial counsel through an interpreter and that his trial counsel informed him of the negotiated sentence and that he had no questions. The defendant's counsel also stated that he had an opportunity to speak with the defendant regarding the ramifications of the guilty plea and that the defendant understood them. The record is silent as to whether the defendant was told he would be deported after pleading guilty. The court found that the defendant's guilty plea was knowing and voluntary and that the trial court had a sufficient factual basis to accept the plea. The court then sentenced the defendant to 16 years' imprisonment for attempted first degree murder and a concurrent five-year term for probation violations related to separate burglary convictions. The defendant did not move to withdraw his guilty plea or file a notice of appeal.

¶ 8    On April 4, 2012, the defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2010)), alleging that the State presented perjured testimony to the grand jury, and that he was not afforded a prompt preliminary or probable cause hearing. On May 25, 2012, the trial court denied the petition, and on September 18, 2013, this court affirmed the trial court. *People v. Vizcarra*, 2013 IL App (1st) 121915-U.

¶ 9    The defendant filed a second *pro se* section 2-1401 petition on September 4, 2015, arguing that his indictment was defective because it did not cite a valid statute and that his trial counsel was ineffective for failing to inform him that he would be deported by pleading guilty. On February 26, 2016, the circuit court denied his petition, and on December 22, 2017, this court affirmed, finding that the appeal was "without arguable merit." *People v. Vizcarra*, 2017 IL App (1st) 161077-U.

¶ 10    On February 20, 2018, the defendant filed a postconviction petition accompanied with his affidavit, a copy of a motion to suppress statement, the immigration detainer from Immigration and Customs Enforcement, and the transcript of the hearing on his guilty plea. In his petition, he asserted that his trial counsel was ineffective because he failed to advise him that a guilty plea would result in deportation. The defendant maintained that his trial counsel was aware of his Mexican citizenship and that, had he known the risk of deportation by pleading guilty, he would have opted for trial where he could have been acquitted or convicted of a lesser charge with the hope of remaining in the U.S. with his "family and loved ones." The trial court dismissed the petition as "frivolous and without merit." This appeal followed.

¶ 11    On appeal, the defendant argues that his petition raised an arguable claim of a constitutional violation. Specifically, he maintains that this court should reverse the summary dismissal of his petition because his trial counsel was ineffective for failing to inform him, prior to his guilty plea, that he could face deportation. We agree.

¶ 12    Pursuant to the Act, a postconviction proceeding that does not involve the death penalty has three distinct stages. 725 ILCS 5/122-1 *et seq*. (West 2010); *People v. English*, 2013 IL 112890, ¶¶ 22-23. In the first stage, the defendant files a petition and the trial court determines whether it is frivolous or patently without merit. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). In order to survive dismissal at this stage, a petition must present only the "gist" of a constitutional claim. *Id.* (citin*g People v. Porter*, 122 Ill. 2d 64, 74 (1988)). The term "gist" describes what the petitioner must allege at the first stage; it is not the legal standard used by the court to evaluate the petition. *People v. Hodges*, 234 Ill. 2d 1, 11 (2009). The legal standard is whether the petition is frivolous or patently without merit, meaning it has no arguable basis in law or fact. *Id*. at 16. "A petition which lacks an arguable basis either in law or in fact is one

which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id*. In this stage, the allegations of fact are considered true, "so long as those allegations are not affirmatively rebutted by the record." *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 47. We review the summary dismissal of a postconviction petition *de novo*. *Hodges*, 234 Ill. 2d at 11.

¶ 13    Initially, we note that the State asserts that the defendant's claim is barred by the doctrine of *res judicata* because he raised the argument that his trial counsel was ineffective in a previous section 2-1401 petition. We disagree. A postconviction proceeding "allows inquiry only into constitutional issues that were not, and could not have been, adjudicated on direct appeal." *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). In this case, the defendant initially raised his ineffective assistance of counsel claim in a section 2-1401 petition, which was an improper forum for such a claim. See *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003) ("[S]ection 2-1401 proceedings are not an appropriate forum for ineffective-assistance claims because such claims do not challenge the factual basis for the judgment.") Because the defendant's claim could not have been appropriately raised in a section 2-1401 petition, it is not barred by *res judicata*.

¶ 14    To succeed on an ineffective assistance of counsel claim, the defendant must demonstrate that his trial counsel's performance was deficient and that he suffered prejudice as a result of his counsel's deficient conduct. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). When, as here, the defendant was convicted pursuant to a negotiated guilty plea, a counsel's conduct is considered deficient if he or she "failed to ensure that the defendant entered the plea voluntarily and intelligently." *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). When deportation is a clear consequence, a criminal defense attorney is required to advise his client that the pending charges against him could result in adverse immigration consequences. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("It is quintessentially the duty of counsel to provide her client with

available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.' " (quoting *Hill v. Lockhart*, 474 U.S. 52, 62 (1985))).

¶ 15     With respect to the first prong of the *Strickland* analysis, we conclude that the defendant's allegations, which at this stage must be taken as true unless positively rebutted by the record, set forth an arguable claim that his trial counsel's performance was deficient. The defendant alleges that his trial counsel never informed him that deportation would result from his guilty plea. This claim is not positively rebutted by the record, as the record does not reflect that his trial counsel or the trial court ever informed him of any such consequences.

¶ 16     To prove the second prong of the *Strickland* analysis, prejudice, the defendant must establish that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Rissley*, 206 Ill. 2d at 457. (quoting *Hill*, 474 U.S. at 59). Generally, a "bare allegation" that if the defendant's trial counsel had not been deficient, he would have demanded trial and pled not guilty is insufficient to establish prejudice. *People v. Hall*, 217 Ill. 2d 324, 335 (2005). Instead, the defendant's "claim must be accompanied by either a claim of innocence or the articulation of a plausible defense that could have been raised at trial." *Id*. at 335-36. However, the existence of a plausible trial defense "is not required in order to show prejudice in cases involving counsel's failure to advise a defendant as to the immigration consequences of his guilty plea." *People v. Deltoro*, 2015 IL App (3d) 130381, ¶ 24. To show prejudice in cases where deportation is a consequence of a guilty plea, the defendant is only required to show that a decision to reject the plea bargain would have been "rational under the circumstances." *Padilla*, 559 U.S. at 372.

¶ 17     A rational decision not to plead guilty is not solely focused on whether the defendant would have been found guilty at trial; rather a defendant might rationally be more concerned

with deportation than with a potential prison sentence. *Padilla*, 559 U.S. at 368. In other words, a defendant who is fearful of deportation more than imprisonment might rationally choose to risk a lengthier prison sentence in exchange for even a small chance of prevailing at trial and, consequently, avoiding deportation. Trial counsel's failure to advise his client of the risk of deportation prejudices the defendant by depriving him of even that small chance. Consequently, it would be inappropriate to require the defendant to show that he would have succeeded at trial in order to establish prejudice.

¶ 18    In the case at bar, the defendant's allegations, taken as true, sufficiently alleged that it would have been rational for him to reject the plea bargain had he known about the immigration consequences of his plea and establish that he was arguably prejudiced by his trial counsel's deficient performance. The defendant alleged that he moved from Mexico to the U.S. when he was eight years old, has been a legal resident ever since, and that all of his "family and loved ones" live in the U.S. He further alleged that, had he been informed of the risk of deportation, he would have proceeded to trial "having the hope of beating the charges," the hope of "lowering the charges" if found guilty, or "the opportunity of remaining in the United States" with his "family and loved ones."

¶ 19    Because the defendant's petition adequately alleged that his trial counsel's performance was arguably deficient and that he was arguably prejudiced by his counsel's errors, we find he presented the gist of a claim for ineffective assistance of counsel. Consequently, we find that the trial court erred in summarily dismissing his postconviction petition at the first stage.

¶ 20    Accordingly, we reverse the trial court's first-stage summary dismissal of the defendant's *pro se* postconviction petition and remand the cause for second-stage postconviction proceedings.

¶ 21    Reversed and remanded.