NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                    

               Docket No. 80172--Agenda 9--September 1996.

    THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. KATHY GAULTNEY,

                               Appellant.

                    Opinion filed December 19, 1996.

                                    

     JUSTICE NICKELS delivered the opinion of the court:

     This case arises from the dismissal of a petition brought

under the Post-Conviction Hearing Act (725 ILCS 5/122--1 et seq.

(West 1992)). In 1990, defendant, Kathy Gaultney, was convicted of

the first degree murder of her husband and was sentenced to 45

years in prison. The conviction and sentence were affirmed by the

appellate court on direct appeal in 1992. No. 5--90--0583

(unpublished order under Supreme Court Rule 23). Defendant filed a

petition for leave to appeal to this court, which was denied.

People v. Gaultney, 148 Ill. 2d 647 (1993).

     On August 6, 1993, defendant filed a pro se post-conviction

petition in the circuit court of Madison County. On August 11,

1993, the State filed a motion to dismiss the petition. The circuit

court dismissed the petition as frivolous and patently without

merit on November 1, 1993. The appellate court affirmed the

dismissal of the petition. No. 5--93--0816 (unpublished order under

Supreme Court Rule 23). We granted defendant's petition for leave

to appeal. 155 Ill. 2d R. 315. We affirm.

                                BACKGROUND

     We will summarize the evidence presented at trial only as

needed to address the issues raised in this appeal. On September

22, 1989, defendant's husband, Keith Gaultney, was killed after

being shot twice in the head at the residence he shared with

defendant. Defendant called the police around 10 p.m. to report a

burglary at her home. When the police arrived, they found the

victim lying face down in his bed, shot twice and apparently killed

during the burglary. A drawer had been removed from a dresser in

the room and was resting partially on the victim's legs. Some of

the contents of the drawer had spilled onto the bed.

     The police interviewed defendant. She told them that she left

the residence about 10 minutes before 7 p.m. She said that, when

she left, she saw the victim in the bedroom, asleep on the bed with

the television on. She returned around 10 p.m. to find the victim

dead. Defendant also told the police that the victim had probably

eaten between 4 p.m. and 6 p.m. A pathologist estimated, in an

autopsy report, that the victim had died roughly within an hour

after eating a meal, based on the contents of the victim's stomach.

     The State called Rachel Lauer, defendant's daughter, to

testify at trial. Rachel was also the victim's stepdaughter. At the

time of the murder, she was in seventh grade and lived with her

mother and stepfather. Rachel testified that she was at the house

around 7 p.m. with her friend, Misty Robards. At that time, her

mother was getting ready to leave and said that she wanted to lock

the doors. Rachel's mother told her to leave and to be back at 12

a.m.

     Rachel and Misty remained in the neighborhood to wait for

Rachel's mother to leave. According to Rachel, they wanted to

return to the house after defendant left to get some money from the

victim. They were going to take the money out of the victim's

wallet while he slept. Rachel and Misty watched the house for 15 to

20 minutes until defendant left. At some point, they encountered

Jodie White, another friend. After Rachel's mother left, Rachel and

Misty returned and entered the house. Jodie remained outside. While

in the house, Rachel went by the bedroom door. She did not enter

the bedroom. Rachel saw a dresser drawer and its contents scattered

around the bedroom. She saw some of her mother's jewelry lying on

the bed. The bedroom light was off but the television was on and

blaring loudly. Rachel saw the victim's feet but the rest of the

victim was "covered up." Rachel thought that her mother and the

victim had been involved in a fight and that the victim was

sleeping. In response to a question from trial counsel, Rachel

testified that she did not hear any noise emanating from the

bedroom other than the television. Rachel's testimony suggested

that the victim was already dead when her mother left the house.

     Misty Robards also testified. Her testimony was similar to

Rachel's. Misty, however, testified that she and Rachel returned to

the house twice after Rachel's mother left. First, they returned

with Jodie White. Misty testified that Rachel went into the house

by herself but came back outside after a short time. Rachel could

not find the victim's wallet. Rachel and Misty returned to the

house a second time. When they returned, both went into the house

this time. Rachel and Misty entered the house through the back

door, which was unlocked. Misty testified that she and Rachel

walked past the bedroom. Her testimony regarding the condition of

the bedroom and the victim was essentially the same as Rachel's.

     In the post-conviction petition, defendant claimed that she

was denied effective assistance of counsel at trial. Specifically,

defendant alleged that her trial counsel failed to ask Rachel

whether she heard the victim snoring in the bedroom on the night of

the murder. According to defendant, Rachel told trial counsel

before trial that she heard the victim snoring when she entered the

house the first time. Trial counsel did not ask her about this

snoring at trial. Defendant alleged that this testimony would have

shown that defendant had not killed the victim before she left the

house and that another individual must have killed the victim.

     In support of the petition, defendant submitted five

affidavits from herself and from relatives. Rachel allegedly told

these individuals that she heard the victim snoring when she first

entered the house. Defendant also submitted an affidavit from trial

counsel, who stated that Rachel told him before trial that she had

heard the victim snoring. Defendant submitted an affidavit from

another attorney, who talked to someone over the phone claiming to

be Rachel Lauer. Defendant, however, did not submit an affidavit

from Rachel, the individual who was critical to defendant's claim.

     The State filed a motion to dismiss the post-conviction

petition on August 11, 1993. The State sought dismissal on four

general grounds: (1) the petition was untimely; (2) the petition

failed to present a substantial showing of a violation of

defendant's constitutional rights; (3) defendant was merely trying

to relitigate the jury trial proceedings; and (4) the claims in the

petition were barred by res judicata or were waived. The motion was

short and contained "boilerplate" language. The State did not

discuss any of the facts of the case in the motion. The State cited

no case law in support of the motion. The State asked that the

petition be dismissed without an evidentiary hearing.

     The circuit court dismissed the petition as frivolous and

patently without merit. The dismissal order stated:

               "This cause comes before the court on Defendant's

          Petition for Post Conviction Relief pursuant to 725 ILCS

          5/122--2.1. The Court having reviewed the Petition and

          affidavits attached thereto, the trial transcript, and

          the opinion of the 5th District Appellate Court finds as

          follows:

               Defendant was convicted of the offense of Murder in

          the death of her husband after a jury trial. She was

          sentenced to the Illinois Department of Corrections for

          a term of 45 years. On the 26th day of August, 1992,

          Defendant's direct appeal was denied by the 5th District

          Appellate Court. On appeal, Defendant raised six issues,

          one of those being whether the circumstantial evidence

          was sufficient to support a verdict of guilty beyond a

          reasonable doubt.

               Defendant's Petition for Post-Conviction Relief is

          raising the issue of the sufficiency of the

          circumstantial evidence presented at trial. Also raised

          is a claim of ineffective assistance of counsel, because

          counsel did not ask a question of Rachel Lauer concerning

          what she heard when she went into the house on the night

          of the murder. There are several affidavits attached to

          the Petition, however there are no affidavits of Rachel

          Lauer or Misty Robards, who were the two witnesses in the

          house.

               The question of sufficiency of the circumstantial

          evidence is res judicata, having already been determined

          by the Appellate Court. The issue of incompetency of

          counsel is waived, being an issue that should have or

          could have been raised on direct appeal. This is an issue

          that Defendant was aware of at time of sentencing. Thus

          Defendant was aware of such issue at time of her appeal.

          Even if such issue is not waived, it is apparent from the

          trial transcript, which includes the testimony of Rachel

          Lauer and Misty Robards, and the lack of affidavits from

          these individuals, that Defendant's Petition fails to

          present a substantial showing of violation of Defendant's

          constitutional rights.

               The Court determines that the Petition is frivolous

          and patently without merit, and is therefore dismissed

          without an evidentiary hearing."

     The appellate court affirmed the dismissal of the petition.

The court noted that the State filed a motion to dismiss before the

trial judge ruled on whether the post-conviction petition was

frivolous and patently without merit. The court stated that a trial

judge should not rely on a motion to dismiss when determining

whether a petition is frivolous. The appellate court then examined

the record and found that the trial judge had not relied on the

motion to dismiss in making his determination. Because the trial

judge did not rely on the State's motion, the court upheld the

dismissal. Justice Chapman dissented. He believed that the record

showed that the trial judge was influenced by the State's motion

and that the dismissal was improper.

                                 ANALYSIS

     Defendant argues that the State is not allowed any input when

the circuit court determines whether a post-conviction petition is

frivolous or patently without merit. Here, the State filed a motion

to dismiss before the circuit court determined that the petition

was frivolous. Defendant argues that the State's motion to dismiss

influenced the circuit court and tainted the circuit court's

determination. According to defendant, this cause should be

remanded for the appointment of counsel and further consideration

of defendant's petition.

     Section 122--2.1 of the Post-Conviction Hearing Act (the Act)

provides:

               "(a) Within 90 days after the filing and docketing

          of each petition the court shall examine such petition

          and enter an order thereon pursuant to this Section.

               ***

               (2) If the petitioner is sentenced to imprisonment

          and the court determines the petition is frivolous or is

          patently without merit, it shall dismiss the petition in

          a written order, specifying the findings of fact and

          conclusions of law it made in reaching its decision. Such

          order of dismissal is a final judgment and shall be

          served upon the petitioner by certified mail within 10

          days of its entry.

               (b) If the petition is not dismissed pursuant to

          this Section, the court shall order the petition to be

          docketed for further consideration in accordance with

          Sections 122--4 through 122--6.

               (c) In considering a petition pursuant to this

          Section, the court may examine the court file of the

          proceeding in which the petitioner was convicted, any

          action taken by an appellate court in such proceeding and

          any transcripts of such proceeding." (Emphasis added.)

          725 ILCS 5/122--2.1 (West 1992).

     If the petition is not dismissed pursuant to section 122--2.1,

section 122--4 provides for the appointment of counsel to indigent

defendants. 725 ILCS 5/122--4 (West 1992). Section 122--5 of the

Act provides:

               "Within 30 days after the making of an order

          pursuant to subsection (b) of Section 122--2.1, or within

          such further time as the court may set, the State shall

          answer or move to dismiss. In the event that a motion to

          dismiss is filed and denied, the State must file an

          answer within 20 days after such denial. No other or

          further pleadings shall be filed except as the court may

          order on its own motion or on that of either party."

          (Emphasis added.) 725 ILCS 5/122--5 (West 1992).

Section 122--6 allows the circuit court to hold an evidentiary

hearing. 725 ILCS 5/122--6 (West 1992).

     Pursuant to the Act, a post-conviction proceeding that does

not involve the death penalty has three distinct stages. In the

first stage, the defendant files a petition and the circuit court

determines whether it is frivolous or patently without merit. At

this stage, the Act does not permit any further pleadings from the

defendant or any motions or responsive pleadings from the State.

Instead, the circuit court considers the petition independently,

without any input from either side. To survive dismissal at this

stage, a petition need only present the gist of a constitutional

claim. People v. Porter, 122 Ill. 2d 64, 74 (1988). This is a low

threshold and a defendant need only present a limited amount of

detail in the petition. At this stage, a defendant need not make

legal arguments or cite to legal authority. Porter, 122 Ill. 2d at

74. The Act provides that the petition must be supported by

"affidavits, records, or other evidence supporting its allegations"

or the petition "shall state why the same are not attached." 725

ILCS 5/122--2 (West 1992). If the circuit court does not dismiss

the petition pursuant to section 122--2.1, it is then docketed for

further consideration.

     The proceeding then advances to the second stage. At the

second stage, the circuit court appoints counsel to represent an

indigent defendant. 725 ILCS 5/122--4 (West 1992). Counsel may file

an amended post-conviction petition. Also, at this second stage,

the Act expressly provides that the State may file a motion to

dismiss or answer to the petition. 725 ILCS 5/122--5 (West 1992).

Section 122--5 specifically contemplates that the State will file

a motion to dismiss or answer after the circuit court has evaluated

the petition to determine if it is frivolous. If the circuit court

does not dismiss or deny the petition, the proceeding advances to

the third stage. At this final stage, the circuit court conducts an

evidentiary hearing. 725 ILCS 5/122--6 (West 1992). If the circuit

court dismisses the petition or denies post-conviction relief at

any stage, the defendant may appeal.

     Several appellate decisions have considered the situation

where the State files a motion before the circuit court has decided

whether the petition is frivolous. See, e.g., People v. Merritte,

225 Ill. App. 3d 986 (1992); People v. Mitchell, 218 Ill. App. 3d

401 (1991). These courts have consistently found that the filing of

a motion at this stage is premature and improper under the Act.

See, e.g., People v. Oury, 259 Ill. App. 3d 663, 668 (1994). The

sections of the Act, when considered collectively, do not authorize

the filing of a motion to dismiss at the first stage.

     The mere early filing of a motion or responsive pleading by

the State, however, does not per se contaminate the circuit court's

determination pursuant to section 122--2.1. See, e.g., Mitchell,

218 Ill. App. 3d at 402-03. The premature filing of a motion to

dismiss does not prevent the circuit court from independently

evaluating whether a post-conviction petition is frivolous or

patently without merit, as required by the Act. Rather, reversal is

required where the record shows that the circuit court sought or

relied on input from the State when determining whether the

petition is frivolous. Compare People v. Barker, 258 Ill. App. 3d

323 (1994) (reversal required where the trial judge requested

argument from both parties); Merritte, 225 Ill. App. 3d 986

(reversal required where the State orally argued its motion to

dismiss at length to the trial judge and where the judge stated

that dismissal was based, in part, on the reasons given by the

State at oral argument); People v. Clark, 239 Ill. App. 3d 546

(1992) (reversal required where the State presented oral argument,

the State used case law to support its oral argument, and the trial

judge said that he had relied on the State's arguments); People v.

Rutkowski, 225 Ill. App. 3d 1065 (1992) (reversal required where

the trial judge heard argument from the State on its oral motion to

strike); People v. Novak, 200 Ill. App. 3d 189 (1990) (reversal

required where the trial judge conducted a hearing on the motion to

dismiss and expressly indicated that he was granting the State's

motion); People v. Magdaleno, 188 Ill. App. 3d 384 (1989) (reversal

required where the trial judge addressed the merits of the State's

motion to strike); with People v. Woods, 239 Ill. App. 3d 559

(1992) (no reversal where the motion was short and cited only one

case, the trial judge did not hear any argument on the motion, and

the order showed an independent analysis); Mitchell, 218 Ill. App.

3d 401 (no reversal where the motion was terse, the trial judge did

not hear any argument from the State, and the dismissal order

showed a detailed analysis).

     We agree with the approach of these appellate decisions.

Section 122--2.1 of the Act authorizes the trial judge to make an

initial independent evaluation of a post-conviction petition. 725

ILCS 5/122--2.1 (West 1992). We ordinarily presume that the trial

judge knows and follows the law unless the record indicates

otherwise. See People v. Terrell, 132 Ill. 2d 178, 219 (1989).

Where the record gives no indication that the trial judge sought

input from the State or relied on the motion to dismiss, we presume

that the judge acted properly.

     In this case, defendant acknowledges that reversal is required

only if the record shows that the circuit court relied on or was

influenced by the motion to dismiss. Defendant argues, however,

that the order shows that the circuit court did rely on the motion

to dismiss. Defendant emphasizes four purported similarities

between the motion to dismiss and the dismissal order to show this

reliance.

     First, defendant argues that the circuit court erroneously

relied on the principle of res judicata, which was raised in the

State's motion, to bar any attack on the sufficiency of the

evidence presented at trial. Defendant contends that she did not

challenge the sufficiency of the evidence in her post-conviction

petition. Second, defendant argues that the circuit court

erroneously relied on waiver in connection with her ineffective-

assistance claim. According to defendant, waiver is inappropriate

here because the same counsel represented defendant both at trial

and on appeal. Defendant contends that the trial judge would not

have mentioned waiver if that argument had not been contained in

the motion to dismiss. Third, defendant argues that the circuit

court dismissed the petition "without an evidentiary hearing,"

which is what the State sought in its motion. Defendant argues that

the circuit court should not consider whether she is entitled to a

hearing at this stage of the proceeding. Fourth, defendant argues

that the circuit court found that the petition failed to "present

a substantial showing of violation of Defendant's constitutional

rights," which is similar to language used by the State in its

motion. Again, defendant argues that this language is used when

considering whether a defendant is entitled to an evidentiary

hearing and that this language would not have been used absent the

motion.

     The purported similarities identified by defendant are too

tenuous to show reliance on the motion to dismiss. First, with

respect to res judicata, an examination of the post-conviction

petition shows that the allegations in the petition do generally

attack the sufficiency of the circumstantial evidence presented at

trial. Second, with respect to waiver, defendant may be correct

that the circuit court overlooked counsel's representation at trial

and on appeal. Waiver aside, however, the circuit court

specifically found that the ineffective-assistance claim was

frivolous because defendant failed to submit affidavits from either

Rachel Lauer or Misty Robards, which was not suggested by the

State. With respect to defendant's third and fourth arguments, some

of the language in the order is similar to the language in the

motion, but, as the appellate court noted, the similar language

involves general terminology that is common in post-conviction

proceedings. The circuit court denied the petition "without an

evidentiary hearing" because defendant requested a hearing in her

petition.

      Most significantly, the trial judge specifically identified

the materials on which he relied in making his determination. He

stated that he had reviewed the post-conviction petition, the

affidavits, the trial transcript, and the decision of the appellate

court on direct appeal. No mention was made of the State's motion

to dismiss. No hearing was held. The analysis in the dismissal

order recited the facts of the case and was more detailed than the

reasons presented in the motion to dismiss. In the order, the trial

judge specifically found that the petition was "frivolous and

patently without merit," which is the proper statutory standard for

dismissal. Accordingly, we reject defendant's argument.

     Defendant also argues that the circuit court erred in

substantively finding the petition frivolous or patently without

merit. Defendant argues that the circuit court erred in dismissing

the petition based on defendant's failure to include an affidavit

from either Rachel Lauer or Misty Robards. Defendant concedes that

she failed to raise this argument in the appellate court and in the

petition for leave to appeal to this court. We find the issue

waived. See People v. Schott, 145 Ill. 2d 188, 201 (1991); Federal

Deposit Insurance Corp. v. O'Malley, 163 Ill. 2d 130, 154 (1994).

     Finally, defendant argues that the prosecutor made certain

improper comments during closing argument. Defendant argues that

trial counsel was ineffective in failing to object to them and that

the comments violated due process. Essentially, the prosecutor told

the jury that it had to accept certain statements of witnesses as

true because they were unrebutted. This argument was not raised in

the post-conviction petition. Section 122--3 of the Act provides

that "[a]ny claim of substantial denial of constitutional rights

not raised in the original or an amended petition is waived." 725

ILCS 5/122--3 (West 1992). In addition, this issue also was not

raised on appeal to the appellate court or in the petition for

leave to appeal to this court. Again, we find the issue waived.

     For the foregoing reasons, the judgment of the appellate court

is affirmed.

                                                                  Affirmed.

     JUSTICE FREEMAN, dissenting:

     The record here clearly indicates that the trial judge was

influenced by and improperly relied on the State's premature motion

in deciding to dismiss defendant's pro se post-conviction petition.

For this reason, I cannot join the majority's affirmance. I agree

with dissenting Justice Chapman of the appellate court. See No. 5--

93--0816 (unpublished order under Supreme Court Rule 23). The trial

judge here was influenced by and relied on the State's motion and,

thus, dismissal of defendant's pro se petition was improper.

     On August 6, 1993, defendant filed her pro se post-conviction

petition, claiming ineffective assistance of trial counsel. The

petition was supported by seven affidavits from herself, her

relatives, and two attorneys, attesting to the fact that a witness

had made exculpatory statements. To be sufficient at this initial

stage of the post-conviction process, defendant's pro se petition

only needed to clear a low threshold by presenting the gist of a

constitutional claim. People v. Porter, 122 Ill. 2d 64, 74 (1988).

In ruling on the petition at this stage, the trial court only

needed to determine that the petition was not frivolous or patently

without merit. See 725 ILCS 5/122--2.1 (West 1992). No evidentiary

hearing was authorized at this stage. See 725 ILCS 5/122--6 (West

1992).

     Five days later, the State prematurely filed a motion to

dismiss, utilizing boilerplate language and terminology suited for

requesting dismissal at a later stage in the post-conviction

process. Because the defendant's right to counsel had not yet

attached at this stage of the process, the State was not permitted

to be actively represented. See People v. Rutkowski, 225 Ill. App.

3d 1065 (1992); People v. Merritte, 225 Ill. App. 3d 986 (1992).

The State's motion claimed that the petition failed to meet a

higher standard than that required at that particular stage of the

process. Thus, the motion stated "defendant's petition fails to

present a substantial showing of a violation of the petitioner's

constitutional rights." The motion also requested that the petition

be dismissed "without an evidentiary hearing." Presumably, the

trial judge, knowing the law, would not consider the motion.

     On November 1, 1993, the trial court issued an order

dismissing the petition, concluding that it was frivolous and

patently without merit. Interestingly, the order, like the State's

motion, referred to a standard of sufficiency appropriate to a

later stage of post-conviction process. Interestingly, also, the

order referred to this standard by means of a statement nearly

identical to the State's statement of the standard in its motion.

Thus, the order stated "defendant's petition fails to present a

substantial showing of violation of defendant's constitutional

rights." The order's statement of the standard was also more

similar to the motion's statement of the standard than to the

statutory standard, itself. See 725 ILCS 5/122--1 (West 1992)

(referring to "a substantial denial of his rights under the

Constitution"). The majority explains that this similarity involves

merely "general terminology that is common in post-conviction

proceedings." Slip op. at 10. I strenuously disagree. The

similarity involves practically a word-for-word statement of an

untimely procedural standard in terms more closely parallel to

those in the State's motion than to those in the statute.

     In addition to this similarity, the order also inappropriately

stated, just like the State's motion inappropriately requested,

that dismissal of the petition was "without an evidentiary

hearing." The majority explains the curious appearance of this

inappropriate language within the order as no more than the

response to the petitioner's request for a hearing. Slip op. at 10.

The problem, however, is that the court need not have responded to

the request. Even if the court had not dismissed the petition,

petitioner's request for a hearing could not have been granted at

this stage in the proceedings (see 725 ILCS 5/122--5, 122--6 (West

1992)), so the court's statement was surplusage.

     To accept the majority's explanations would mean that it was

simply coincidental that the State's motion was similar to the

trial judge's order. I find that hard to believe. These two

language and untimely procedural reference similarities clearly

suggest to me that the trial judge was influenced by the State's

motion. That being the case, I am not persuaded that the other two

similarities noted by petitioner are tenuous as the majority

believes. The remaining similarities, rather, strengthen the

petitioner's case.

     The State's motion stated that "the Post-Conviction Hearing

Act is not designed to relitigate the defendant's guilt or

innocence established in the jury trial proceedings" and that "the

defendant's petition is barred by the doctrine of res judicata in

that all claims which were raised or which could have been raised

on appeal are waived and cannot be raised in a post-conviction

proceeding." The order stated that "[t]he question of sufficiency

of the circumstantial evidence is res judicata, having already been

determined by the Appellate Court. The issue of incompetency of

counsel is waived, being an issue that should have or could have

been raised on direct appeal." The finding that the issue of

incompetency of counsel was waived was legally incorrect, however,

because a waiver exception applied in this case.

     The majority explains that the order drew its statement

regarding evidentiary sufficiency being res judicata, not from the

State's motion, but from the petition's allegations, in general.

Slip op. at 9. The petition, however, specifically raised only the

issue of the ineffectiveness of trial counsel. The majority does

not explain at all the similarity between the order's incorrect

legal finding of waiver and the State's motion urging waiver. The

majority simply sidesteps the matter, reasoning that the trial

court's frivolous finding stated a basis other than that suggested

by the State's motion. Slip op. at 10. To say that the order had an

indication of some independent basis, however, does not explain the

similarity.

     I believe the State prematurely filed a somewhat generic

motion to dismiss, which was likely designed to attack a post-

conviction petition which had survived this first stage of post-

conviction proceedings. The motion's influence is shown by the

trial court's use of the same language, referring to a

determination more properly made at a later stage in post-

conviction proceedings; and of nearly verbatim language, referring

to a statutory standard more properly applied at a later stage. The

similar language, the similar untimely procedural references, and

the similarly inappropriate reliance on waiver convince me that the

trial judge was influenced by and relied on the State's motion.

Accordingly, dismissal of defendant's pro se petition was improper.