2022 IL App (2d) 210077-U
No. 2-21-0077
Order filed July 26, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Nos. 13-CF-1228 13-CF-1229 |
| CORTEZ JERMAIN BROWN, | ) ) | Honorable Joseph G. McGraw, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where defendant's postconviction petition was 166 pages long with a 343-page appendix, yet the greater share of the petition espoused meritless legal theories, we cannot say that the trial court could not have adequately considered the entire petition in the two days between its filing and the trial court's summary dismissal.

¶ 2    Defendant, Cortez Jermain Brown, appeals from the first-stage summary dismissal of his

postconviction petition brought under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1

*et seq.* (West 2020)). The petition, which was 166 pages long and had 323 pages of attachments,

was file-stamped on January 19, 2021, and dismissed two days later on January 21, 2021. In its

dismissal order, the trial court stated only that it found the petition to be frivolous and patently without merit. On appeal, defendant does not argue that any of his claims were meritorious. Rather, he contends that the trial court's dismissal of his voluminous petition just two days after its filing, in an order giving no specific reasons for the dismissal, rebuts the presumption that the court properly considered the petition. Defendant implicitly asks us to apply a standard under which the time necessary to review a petition is directly related to the sheer length of the petition. We conclude that such a standard would be inappropriate. We also disagree with defendant that the court's dismissal of the petition two days after its filing was by itself enough to show that the court did not consider it properly. Further, under *People v. Porter*, 122 Ill. 2d 64 (1988), the court's failure to include in the dismissal order its reasons for deeming the claims frivolous is not a basis for reversal. Therefore, we affirm.

¶ 3                               I. BACKGROUND

¶ 4     In November 2016, defendant entered negotiated guilty pleas to various offenses in case Nos. 13-CF-1228 and 13-CF-1129. In exchange for the pleas, the State agreed to an aggregate sentencing cap of 50 years' imprisonment in the two cases. In February 2017, the court sentenced defendant to an aggregate 42 years' imprisonment in the two cases. The court denied defendant's motion for reconsideration of the sentence. Defendant did not file a direct appeal.

¶ 5     Between September 2017 and February 2018, defendant filed three petitions for relief under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2016)). In all three petitions, he claimed that his convictions were void because the legislature violated the single-subject rule when it amended the applicable criminal provisions. The State responded to each petition with a motion to dismiss or quash service. Defendant did not respond to these motions, and the court dismissed all three petitions.

¶ 6    Later, defendant filed his postconviction petition, which the trial court file-stamped on January 19, 2021. In the 166-page petition, defendant asserted eight claims.

¶ 7    The first claim, spanning 58 pages, was essentially that the trial court lacked personal jurisdiction over defendant because, since the dissolution of the original United States, courts have had jurisdiction over corporate persons only. Such a claim is of the type associated with "Sovereign Citizens" and similar groups. See Francis X. Sullivan, Comment, *The 'Usurping Octopus of Jurisdictional/Authority': The Legal Theories of the Sovereign Citizen Movement*, 1999 Wis. L. Rev. 785, 795-96 (1999) (*The "Usurping Octopus"*) (explaining the characteristics of such claims).

¶ 8    The second, third, and fourth claims likewise advanced unconventional legal theories, but these were not strictly Sovereign Citizen theories.

¶ 9    The second claim (48 pages) advanced a theory that a criminal conviction based on a charge citing the Illinois Compiled Statues is void because that compilation does include the enacting clauses required by the Illinois Constitution of 1970. The third claim (29 pages) was based on a theory that the statutory provisions conferring the prosecutorial powers of State's Attorneys are not in accord with the Illinois Constitution of 1970 and, thus, all criminal convictions obtained by State's Attorneys are void. The fourth claim (4 pages) was based on a theory that all felony convictions in cases over which associate judges presided are void.

¶ 10    The fifth through eighth claims (16 pages collectively) asserted more conventional legal positions. The fifth claim implied that, in case No. 13-CF-1228, defendant's convictions of attempted murder (720 ILCS 5/8-4(a), (c)(1)(B) (West 2012)) and aggravated unlawful restraint (720 ILCS 5/10-3.1(a) (West 2012)) violated the one-act, one-crime rule, despite involving separate victims, because the offenses were part of the same course of conduct. Claims six through

eight were based on the principles of *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jerse*y, 530 U.S. 466 (2000). Both the sixth and seventh claims made the same basic assertion that the trial court unconstitutionally limited defendant's good time credit based on its finding at sentencing that defendant inflicted great bodily harm (see 730 ILCS 5/3-6-3(a)(2)(iii) (West 2016)). The eighth claim was that the trial court's finding of severe bodily injury as a predicate for consecutive sentencing (see 730 ILCS 5/5-8-4(d)(1) (West 2016)) was unconstitutional because the charging instrument did not allege severe bodily injury.

¶ 11    The petition had a 323-page appendix. The first page listed 62 "exhibits." These identified exhibits were documents from the record in case No. 13-CF-1228, Illinois statutory and constitutional provisions, and transcripts from 1970 Illinois Constitutional Convention. Following the identified exhibits were 71 pages of material obviously inspired by the Sovereign Citizen movement or related ideologies. The initial page of these 71 pages was captioned:

"[Public Notice]

EXPLICIT RESERVATION OF RIGHTS FOR:

:Cortez-Jermaine: of the House of :Brown" (Brackets in original.)

The 71-page tome largely defied summarization. The material included copies of the written oaths of office of various officials and an "Asservation of Sovereign Status by Foreign Neutral under the Absolute Laws of the Living Father."

¶ 12    On January 21, 2021—two days after the petition was file-stamped—the court addressed the petition on the record:

"THE COURT: All right.

The defendant has caused to be filed a first stage post conviction [*sic*] petition.

The Court has reviewed the first stage post-conviction petition advised [*sic*] to be patently frivolous. It not [*sic*] state the gist of a constitutional claim; therefore, it is dismissed.

Please prepare an order."

The court entered an order the same day. In full, it stated: "The Court finds the defendant's [p]etition is [p]atently frivolous & without merit & does not [s]tate the gist of a [c]onstitutional [c]laim."

¶ 13    Defendant filed a timely notice of appeal.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, defendant contends that the trial court erred in dismissing his petition. He does not claim that the petition raised any issue of merit. Rather, he argues that the dismissal of his 489-page petition (inclusive of exhibits) just two days after it was filed-stamped, in an order that did not refer to the petition's contents, rebuts the presumption that the court properly considered the petition.

¶ 16    The State responds that defendant "has failed to rebut the presumption that the post-conviction judge properly examined the contents of the petition prior to dismissing it." The State deems defendant's argument simply "speculative" because he points to nothing in the record to impugn the trial court's assertion in open court that it reviewed the petition. The State suggests that "[i]f defendant is unable to articulate even one potentially meritorious issue in the petition, a two-day period of time was certainly sufficient for the post-conviction judge to arrive at the same conclusion." It further argues that, under *Porter* and its progeny, the court's failure to provide reasons in its dismissal order for deeming the claims frivolous is not a basis for reversal.

¶ 17 In reply, defendant contends that the court's "fail[ure] to adequately review the petition *** [is] evidenced by [its] failure to reference any portion of the nearly 500-page document in either [its] oral ruling or written pronouncement of dismissal." He contends that "[t]he brevity" of the court's dismissal "would have been a more appropriate response to a petition that was only a few pages long *** [and] that could be reviewed quickly, not one that has detailed arguments and documentation amassing nearly 500 pages."

¶ 18 By asking us to conclude that the court had insufficient time to adequately consider the petition given its length, defendant implies that there is a direct correlation between the length of a petition and the time needed to review it. We disagree. Defendant's first claim perfectly illustrates why we cannot assume a direct relationship between the mere length of a petition and the time needed to review it.

¶ 19 In his petition, defendant summarizes his first claim as follows:[1]

"Petitioner affirms that jurisdiction over his person/venue has been lacking since the filing of the complaint(s), information(s), indictment(s), or warrant(s) (*ab initio*). Petitioner avers that it *cannot* be assumed or presumed, by the courts or the State of Illinois that he is a 14th amendment (corporate) citizen, in which government(s) can seize jurisdiction over his persona as if he was a fictional dummy corporation (artificial person/entity) with his 'name' spelled in (*idem sonans*) *all capital letters*; and, because of these facts, his conviction, judgement [*sic*], and incarceration under same is… not only illegal, but void *ab initio* for issues of falsification of the record, failure to provide 'full disclosure', and fraud by, through, and under (corporate) State of Illinois 'privately' owned

_____

[1]We have reformatted this passage without making any substantive changes.

'statutes' as intellectual property and, where petitioner is not an 'accommodation party' nor 'surety' for said all capital letter 'name', jurisdiction/venue has been lacking, *ab initio*." (Emphases in original.)

¶ 20    Defendant's summary makes clear that this claim is based on the patently false legal theories of the "Sovereign Citizen" movement and related groups.

"At the heart of Sovereign Citizen legal theory is the belief that the government has created two forms of citizenship: sovereign (or *de jure*) citizenship and federal (or Fourteenth Amendment) citizenship. Sovereign Citizens are state citizens. Their 'inalienable natural rights are recognized, secured, and protected by [the] state Constitution against State actions and against federal intrusion by the Constitution for the United States of America.' Terminology is important: A 'state is not the State of Wisconsin, which Sovereign Citizens argue is a 'fictional federal "State within a state;" ' Sovereign Citizen 'states' have identical borders, but they exist independently of the federal government and draw their sovereignty directly from their citizens. Sovereign Citizens are United States citizens only in the sense originally intended by the Constitution, which is that the citizen of one state is to be considered and treated as a citizen of every other state.

In contrast to Sovereign Citizenship, federal citizenship is much more limited. Federal citizenship was created by the Fourteenth Amendment, which, according to the Sovereign Citizens, created 'a citizenship of the United States as distinct from that of the states.' Fourteenth Amendment citizenship is not based on race; rather, it is a class of persons who are 'enfranchised to the federal government.' This class includes all federal employees and residents of the District of Columbia, Guam, and other areas of the United States that have not attained statehood. More importantly, it includes those who have

renounced their birthright of sovereign citizenship by entering into contracts with the government, receiving benefits from it, and thereby becoming subject to its jurisdiction.

Because federal citizens have negotiated away *** their sovereign rights, the federal government can regulate and tax the privileges they receive, such as the privilege of driving or the privilege of owning property. Federal citizens are not protected by the Bill of Rights, although the Fourteenth Amendment itself grants them certain privileges and immunities ***. Currently, federal citizens possess many of the same civil rights as Sovereign Citizens because Congress has granted them, but Congress can rescind them at any time." Francis X. Sullivan, *The "Usurping Octopus"*, 1999 Wis. L. Rev. at 797-98 (1999).

¶ 21 Defendant's assertion that he cannot be treated as "a 14th amendment (corporate) citizen" clearly indicates that his first claim is based on Sovereign Citizen legal theory or a close relative. Intuitively, these theories are completely inconsistent with the realities of federal and state law. Indeed, they are so far removed from ordinary legal argument that courts may struggle to articulate the theories' flaws in normal legal terms. We will not attempt to do so, nor would we expect the trial court to do so. Secondary sources, such as Caesar Kalinowski IV, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153, 171-92 (2019), take on that task.

¶ 22 Filings based on Sovereign Citizen legal theory are typically marked by exceptional length and quantity of citations; they thus tax the resources of courts:

"Sovereign Citizens *** present a serious problem for overburdened courts responsible for giving a fair hearing to all claimants. *** Sovereign Citizen legal theorists appear to have studied the law in great detail. *** Pleadings filed in Sovereign Citizen litigation cite a staggering range of case law: A downloadable Sovereign Citizen brief

addressing the right to drive without a state-issued driver's license takes up thirty-four printed pages and cites eighty cases as well as the Yale Law Journal, Blackstone's Commentaries, and the Corpus Juris Secundum. The author of the on-line Dixieland Law Journal, a Sovereign Citizen adherent, exhaustively analyzes the history of Norman and pre-Conquest England to refute the proposition that Sovereign Citizens must present their names in a certain format to retain personal sovereignty. Analyses of other issues are similarly detailed, even if the writing is ungrammatical, the style overexcited, and the logic presented in a confusingly non-linear pattern.

The resulting pleadings are dense, complex, and virtually unreadable." Francis X. Sullivan, *The "Usurping Octopus"*, 1999 Wis. L. Rev. at 795-96.

As *The "Usurping Octopus"* indicates, there are multiple sources of model arguments for litigants to use in pressing Sovereign Citizen claims. Thus, such claims often have a close resemblance to one another.

¶ 23     What we have explained so far establishes that, despite their length, such claims as defendant's first claim are quickly recognizable as part of a family of claims sharing a meritless legal theory. The time it takes to assess such claims bears no direct relationship to their length, the number of citations, or the degree of detail in the argument.

¶ 24     Further, although claims based on Sovereign Citizen theories are perhaps the most familiar, there may be other theories with similar features. An example is defendant's second claim, which asserts the invalidity of the Illinois Compiled Statutes. The first and second claims comprise the great majority of the petition. We decline to say how many minutes or hours it should have taken the court to review those claims. Thus, we cannot conclude that the trial court did not adequately consider the petition before dismissing it.

¶ 25 Notably, defendant does not—and, really, cannot—claim that the trial court could not have reviewed the petition *at all*, but only that it could not have reviewed all claims in sufficient depth. Provided that *some* review was possible, we deem it inappropriate to decide what amount of time would be necessary for a sufficiently complete review. Any such attempt on our part would unreasonably limit the flexibility of trial courts in dealing with lengthy but clearly nonmeritorious claims.

¶ 26 For these reasons, we decline to infer from the timing of the dismissal that the court inadequately considered defendant's postconviction claims.

¶ 27 We turn to defendant's argument that we must reverse the dismissal because the court did not specify the basis for dismissal as the Act requires. Whether the court complied with applicable procedural requirements is a question of law that we review *de novo*. See, *e.g.*, *People v. Space*, 2018 IL App (1st) 150922, ¶ 62 (whether a court complied with rules governing *voir dire* was a question of law and reviewed *de novo*). The court's failure to explain its ruling is not a basis for reversal.

¶ 28 Section 122-2.1(a)(2) (725 ILCS 5/122-2.1(a)(2) (West 2020)) of the Act provides that, when a court determines that a petition is frivolous or patently without merit, the court "shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision." But that provision is merely directory (*Porter*, 122 Ill. 2d at 81-82):

> "[I]f the petition is found to be frivolous and patently without merit, the court *shall* dismiss the petition. *** It is not mandatory, however, that the order dismissing the petition be written, or that it specify findings of fact and conclusions of law." (Emphasis in original.) *Porter*, 122 Ill. 2d at 84.

Indeed, if section 122-2.1(a)(2) were read as a legislative mandate for a written order containing findings of fact and conclusions of law, that mandate would violate the separation-of-powers doctrine. *Porter*, 122 Ill. 2d at 82. (Although *Porter* is decades old, the supreme court has never abrogated that decision (see *People v. Robinson*, 217 Ill. 2d 43, 55 (2005) (citing *Porter* with approval)) and the appellate court continues to apply *Porter*. See, *e.g.*, *People v. Cooper*, 2015 IL App (1st) 132971, ¶ 9-10.) Given the rule in *Porter*, the absence of findings of fact and conclusions of law in the dismissal order cannot by itself be a basis for reversal.

¶ 29    We recognize that, although *Porter* regarded section 122-2.1(a)(2)'s specificity requirement as directory, not mandatory, the court deemed it "advisable that the trial court state its reasons for dismissal." *Porter*, 122 Ill. 2d at 81. *Cooper*—on which defendant relies—noted that a dismissal order lacking specific reasons can make it more difficult for a petitioner to know what issues he or she should raise on review. *Cooper*, 2015 IL App (1st) 132971, ¶ 10. Nevertheless, here we do not see how the lack of specificity impeded defendant's ability to assert on appeal that the trial court erred in ruling that all his claims lacked merit. "It is a fundamental principle of appellate law that when an appeal is taken from a judgment of a lower court, '[t]he question before [the] reviewing court is the correctness of the result reached by the lower court and not the correctness of the reasoning upon which that result was reached.' " *People v. Johnson*, 208 Ill. 2d 118, 128 (2003) (quoting *People v. Novak*, 163 Ill. 2d 93, 101 (1994)). This is particularly true here, where we apply the *de novo* standard of review for summary dismissals. See *People v. Niffen*, 2018 IL App (4th) 150881, ¶ 20. Defendant had the assistance of appellate counsel. Appellate counsel presumably reviewed all of defendant's claims; if counsel deemed that any were of arguable merit, counsel could have so argued.

¶ 30    In his reply brief, defendant argues that even if the dismissal order's lack of specific reasons does not by itself require that we reverse the dismissal, the timing of the dismissal *combined with* the lack of specific reasons, or indeed any mention of the petition's contents, indicates that the trial court did not adequately review the petition. We disagree. A reviewing court presumes that the trial court "knows and follows the law unless the record demonstrates otherwise." *People v. Blair*, 215 Ill. 2d 427, 449, (2005). Since the trial court stated that it reviewed the petition and the record does not rebut that statement, we must accept it.

¶ 31                              III. CONCLUSION

¶ 32    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 33    Affirmed.