| NOTICE |
| --- |
| This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1) |

2022 IL App (4th) 210749-U

NO. 4-21-0749

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 13, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
| --- | --- | --- |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ALFRED ROLAND WALKER, | ) | No. 17CF645 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justice Zenoff concurred in the judgment.
Justice Turner dissented.

**ORDER**

¶ 1    *Held*: Defendant stated the gist of a constitutional claim trial and appellate counsel provided ineffective assistance, arising from trial counsel's failure to impeach one witness. Thus, the trial court's summary dismissal of defendant's postconviction petition was error.

¶ 2    At a McLean County bench trial, the trial court found defendant, Alfred Roland Walker, guilty of home invasion (720 ILCS 5/19-6(a)(3) (West 2016)), armed robbery (720 ILCS 5/18-2(a)(2) (West 2016)), aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2016)), and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2016)). The court sentenced defendant to 65 years of incarceration. Defendant filed a posttrial motion and took a direct appeal. *People v. Walker*, 2020 IL App (4th) 180774. We affirmed his conviction. *Id.* ¶ 96. On August 26, 2021, defendant filed a *pro se* postconviction petition, which the circuit court

summarily dismissed at the first stage as frivolous and without merit. Defendant submits trial counsel provided ineffective assistance by (1) failing to impeach or take other action in response to unexpected testimony, going to the identification of defendant, and (2) failing to object or otherwise address arguably inadmissible and unduly prejudicial statements uttered by the officers during defendant's custodial interrogation. In addition, defendant asserts appellate counsel provided ineffective assistance for failing to raise these two claims on direct appeal. Because we find defendant states the gist of a constitutional claim, we reverse the court's judgment dismissing defendant's postconviction petition at the first stage.

¶ 3                                    I. BACKGROUND

¶ 4            In June 2017, the State charged defendant with offenses based on the conduct underlying his eventual convictions. In July 2018, defendant was convicted at a bench trial in the McLean County circuit court of home invasion (720 ILCS 5/19-6(a)(3) (West 2016)), armed robbery (720 ILCS 5/18-2(a)(2) (West 2016)), aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2016)), and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2016)).

¶ 5            At trial, the State presented the testimony of the two complaining witnesses, Darla Powell and Kevin Powell, in addition to the testimony of several law enforcement officers and forensic witnesses. Darla described the events forming the basis for defendant's convictions.

¶ 6            On the evening of November 9, 2016, Darla was home alone when three men knocked on her door around 6:30, announcing "pizza delivery." She opened the door, and one of the individuals pointed a firearm at her and asked where her husband was. She described all three as black males, two with nothing covering their faces, and one of the latter holding a pizza box

and a firearm. As the men were rummaging through the house, Darla testified one of them said "Mack, somebody is in the basement."

¶ 7 The men directed Darla to call Kevin to request he come home, and after she did, placed her in the trunk of her car. She estimated she was in the trunk at least 10 minutes when she heard three gunshots. She heard Kevin call her name, so she got out of the trunk and found Kevin with a bloody face in the kitchen. She went to a neighbor's home and asked someone there to call 911. Within two or three minutes, the police arrived. Darla acknowledged at trial she hoped defendant was convicted.

¶ 8 Kevin testified, on November 9, 2016, during the evening, he was working at his place of business around the corner from the home he shared with Darla. He received a phone call from Darla asking him to come home around 7. When he arrived at the front door of the home, Kevin was met by three masked men with firearms. The men brought him into the house, hit him in the face, and asked him for $40,000. Two of the men never removed their masks. Kevin suffered gunshot wounds to a leg and an arm. After Kevin was shot, the three men left without the $40,000.

¶ 9 In June 2017, the investigators had Kevin view a photo lineup, during which he identified a photo of defendant as someone he knew as "Big Mack" or "Fat Mack." Kevin knew defendant through one of his family members and had seen him near his place of business a couple of months before. Kevin admitted he may have told the investigators he did not believe defendant was involved. One of the detectives had Kevin view a video recording of defendant buying a pizza at Casey's, after which Kevin indicated defendant might have participated in the crime. Kevin admitted he formerly sold drugs and knew other such dealers.

¶ 10 Through law enforcement witnesses, the State introduced a receipt for the purchase of a pizza at a Casey's and a video recording from a security camera at this Casey's, depicting

defendant buying a pizza at about 5:35 in the evening on November 9, 2016. Fingerprints matching defendant and Jamal Parks were found on a pizza box left in Darla and Kevin's home.

¶ 11     The State's evidence included cellular phone records showing 17 phone calls and several text messages between defendant's phone and a number belonging to Parks. These communications occurred on November 8 and 9, 2016, but these were the only ones taking place between these two phones from October through December 2016.

¶ 12     The State also introduced a video recording of the investigators' custodial interview of defendant. The State and defense counsel noted the recording contained some material considered inadmissible. Defense counsel identified such statements as those relating to defendant's bond and arrest warrant. Neither party raised an issue about any statements made during the interview about Parks, and, by agreement, the entire recording was admitted.

¶ 13     During the interview, defendant denied knowing Parks but admitted he purchased a pizza from Casey's on the day in question. Defendant related a story about meeting two others, Parks not being one of them, for the purpose of smoking marijuana. He thought he might have been able to sell them some too, but claimed they struck him with a pistol, robbed him of his marijuana, and forced him from the car. Defendant claimed he then called the phone number he had been given for one of them to threaten them and demand the return of his drugs.

¶ 14     Also, during the interview, the police officers asserted several times Parks was a member of a "rip-off crew," and they had already identified Parks as a participant in the crimes. The investigators as well mentioned more than once Parks was dangerous and had murdered people "probably for sport." Trial counsel did not object to any of these assertions and even emphasized during his cross examination that Parks was known as a member of a "rip-off crew."

¶ 15    The State, through an agent with the Federal Bureau of Investigation, introduced various cellular phone records showing the location of defendant's phone on the evening of November 9, 2016. This demonstrated several calls originated from defendant's phone in the vicinity of the Powell's home between 7:19 and 7:32 p.m. on November 9, 2016. The State did not introduce any evidence about the locations of the phones called from defendant's device.

¶ 16    When trial counsel moved for a directed finding, he referred several times to Parks's membership in a "rip-off crew." The State, in turn, argued the evidence connected defendant to Parks. The trial court denied defendant's motion.

¶ 17    During closing arguments, both parties repeatedly referred to Parks. Trial counsel argued Parks was "wanted for murder" and described in various ways his connection to a "rip-off crew."

¶ 18    While announcing its decision, the trial court noted several times it was "convinced" Parks was present at the Powell's home for the crime, calling out the phone calls between defendant and Parks. As well, the court noted Darla overheard one of the perpetrators call the other "Mack," and its similarity to defendant's nicknames.

¶ 19    Defendant filed a posttrial motion, urging the trial court erred in overruling his objections during the State's argument and in denying his motion for a directed verdict. When counsel argued defendant's motion, he described Darla's "Mack" testimony as a "complete surprise." He noted when it occurred, he asked his co-counsel to confirm he had heard the testimony correctly. He admitted he probably "should have engaged" more, and volunteered the possibility he was "ineffective" for not doing so.

¶ 20 The trial court reiterated its belief Parks was one of the perpetrators, and again noted Darla's "Mack" testimony. The court denied defendant's posttrial motion, and sentenced defendant to an aggregate term of 65 years of incarceration.

¶ 21 On direct appeal, defendant argued the evidence was insufficient to convict him. We affirmed, noting *inter alia*, the trial court's reliance on Darla's "Mack" testimony. *Walker*, 2020 IL App (4th) 180774, ¶ 52.

¶ 22 On August 26, 2021, defendant filed his *pro se* postconviction petition, alleging trial counsel was ineffective for (1) agreeing to the admission of the recording of his custodial interview, (2) failing to object to the recording, and (3) failing to object to Darla's "Mack" testimony. He also alleged appellate counsel was ineffective for failing to raise these issues on direct appeal. The circuit court summarily dismissed defendant's petition, finding (1) trial counsel's decisions relative to the video recording were "trial strategy," (2) defendant was not prejudiced by such decisions, (3) defendant failed to identify how trial counsel should have addressed Darla's surprise testimony, and (4) trial counsel's "decision" not to challenge Darla's testimony did not "fall below an objective standard of reasonableness."

¶ 23 This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25              A. Review of Summary Dismissals and Standard of Review

¶ 26 The circuit court at the first stage of a postconviction proceeding must review the defendant's petition and dismiss the petition if the court determines it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020). Because most often the petition is *pro se*, the burden on the defendant is lower in order to give an indigent defendant a meaningful opportunity to present the claims. *People v. Porter*, 122 Ill. 2d 64, 73 (1988). A defendant does

not have to cite any authority or construct a legal argument. *Id.* Construed liberally, the defendant's petition must only state the "gist" of a constitutional claim to avoid dismissal at the first stage. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001) (quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996)). This standard presents a "low threshold," requiring only "a limited amount of detail." *Gaultney*, 174 Ill. 2d at 418. The defendant is not required to flesh the claim out "in its entirety." *Edwards*, 197 Ill. 2d at 244.

¶ 27 At this first stage, a postconviction petition should be dismissed as lacking merit "only if the petition has no arguable basis either in law or in fact." *People v. Tate*, 2012 IL 112214, ¶ 9. A circuit court's involvement at this juncture is solely administrative to filter out those petitions without merit or substance. *Id.* Ineffective assistance claims based on what an attorney should have done, as opposed to what was done, often depend on proof of matters outside the record. *Id.* ¶ 14. Notably, forfeiture of a defendant's claims not raised on a direct appeal does not apply if the claims are based on errors outside the record. *People v. Blair*, 215 Ill. 2d 427, 452 (2005).

¶ 28 Further, consideration of trial counsel's strategy is inappropriate at the first stage, as both parties are generally represented by counsel at the second stage. *Tate*, 2012 IL 112214, ¶ 22.

¶ 29 We review a dismissal of a postconviction petition at the first stage *de novo*. *Edwards*, 197 Ill. 2d at 247.

¶ 30 B. Defendant States the Gist of a Constitutional Claim

¶ 31 Defendant first asserts trial counsel failed to provide reasonable assistance by failing to impeach Darla, or otherwise respond, when she unexpectedly testified one of the perpetrators called another "Mack." Defendant was apparently sometimes known as "Big Mack"

- 7 -

or "Fat Mack." He claims appellate counsel was ineffective for failing to preserve the issues relating to such ineffective assistance of trial counsel.

¶ 32        Ineffective assistance claims relating to failing to impeach witnesses can certainly be viable. *People v. Plummer*, 344 Ill. App. 3d 1016, 1024 (2003). The defendant therein alleged trial counsel's failure to obtain and use the State's principal witness's mental health records, which revealed her history of hallucinations, constituted ineffective assistance. *Id.* The records would have permitted trial counsel to directly impeach the witness's denial she experienced hallucinations, and her general credibility by suggesting her mental health adversely impacted her perception of events. *Id.*

¶ 33        The court began its analysis noting the intent of the Post-Conviction Hearing Act (725 ILCS 122-1 *et seq.* (West 2020)) is that claims implicating matters outside the record should not be dismissed on the pleadings. *Plummer*, 344 Ill. App. 3d at 1020. Therein, the mental health records were not contained within the records as they were not obtained until after the trial. *Id.* at 1023.

¶ 34        Defendant's claims regarding Darla's testimony likewise implicate matters outside the record. Among other issues, the record does not reveal the cause for trial counsel's admitted surprise at the testimony. The record does not demonstrate if the State disclosed Darla's statement, or if she made it previously. If the State knew of the statement and failed to disclose it to defendant, trial counsel might have been able to obtain favorable relief for a discovery violation. Alternatively, if the State disclosed the statement, defendant might have an ineffective assistance claim based on a failure to investigate or other theory. *Id.* at 1022.

¶ 35        In *Plummer*, the court next noted circuit courts are prohibited from engaging in fact-finding at the first stage, because the facts are to be taken as true. *Id.* at 1020. Here, the circuit

court made extensive findings of fact in support of its decision to dismiss defendant's postconviction petition. Such findings included determinations trial counsel's decisions were strategic, which as we note above, are contraindicated at the first stage of postconviction petition review. *Tate*, 2012 IL 112214, ¶ 22.

¶ 36 Further, the right to confront witnesses, which includes the right to cross-examine and to impeach a witness's credibility, is guaranteed a defendant by the federal and state constitutions. *Plummer*, 344 Ill. App. 3d at 1023. Permissible cross-examination includes "any matter that goes to explain, modify, discredit, or destroy the testimony of the witness." *Id.* The fact-finder is entitled to such details so it may draw appropriate inferences, determine the credibility of evidence, and make informed judgments. *Id.* Therefore, allegations a defendant has not had the opportunity to effectively cross-examine and impeach an important witness can constitute the gist of a constitutional violation. *Id.* at 1024.

¶ 37 Defendant was arguably deprived of the right to appropriately cross-examine and possibly impeach Darla. Doing so would have provided detail that could have raised a question in the trial court's mind at trial about Darla's credibility. In turn, that could have changed the court's necessary finding defendant participated in the crimes. Darla and Kevin testified differently about who was masked and when, and Kevin did not place defendant at their home. Thus, Darla's testimony that one of the perpetrators called another participant defendant's known nickname was possibly critical. The trial court certainly thought her testimony about the use of "Mack" was relevant, as it noted the testimony formed the basis for its decision. As well, trial counsel admitted his failing to act may have been ineffective assistance. In short, trial counsel's failure to impeach Darla's credibility, or otherwise address the surprise testimony, may have been "outcome determinative." *Id.*

¶ 38	For the foregoing reasons, we find defendant sufficiently stated the gist of a constitutional claim.

¶ 39	C. The Recording of Defendant's Custodial Interrogation

¶ 40	Defendant next asserts trial counsel should not have agreed to the admission of the entire recording of his custodial interview because it contained numerous unduly prejudicial and inadmissible comments by those conducting the interview. He also asserts appellate counsel provided ineffective assistance by failing to address this.

¶ 41	We could address these remaining allegations as trial counsel's actions could have been the result of trial strategy or due to a failure to investigate. However, summary partial dismissals at the first stage of a postconviction proceeding are prohibited. *Id.* Since one of defendant's allegations presents the gist of a constitutional violation, the circuit court must docket defendant's entire petition and advance it to the second stage. *Id.* at 1024-25. Given this, we do not need to address the remaining allegations. *Id.* at 1025.

¶ 42	III. CONCLUSION

¶ 43	For the foregoing reasons, we reverse the circuit court's judgment. The court is directed to docket defendant's entire petition for second stage consideration.

¶ 44	Reversed and remanded with directions.

¶ 45	JUSTICE TURNER, dissenting:

¶ 46	I respectfully dissent. Assuming *arguendo* trial counsel's performance was deficient regarding his handling of Darla's testimony, I would find it is not arguable defendant was prejudiced.

¶ 47	This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

To obtain reversal under *Strickland*, a defendant must prove (1) counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93.

¶ 48 " 'At the first stage of postconviction proceedings ***, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' " (Emphasis in original.) *Tate*, 2012 IL 112214, ¶ 19 (quoting *People v. Hodges*, 234 Ill. 2d 1, 17 (2009)). In other words, the court may summarily dismiss the petition only if its ineffective assistance of counsel claims have " 'no arguable basis either in law or in fact.' " *Tate*, 2012 IL 112214, ¶ 20 (quoting *Hodges*, 234 Ill. 2d at 11-12). A petition lacks an arguable legal basis when it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16. A petition lacks an arguable factual basis when it is based on a fanciful factual allegation, such as one that is clearly baseless, fantastic, or delusional. *Hodges*, 234 Ill. 2d at 16-17. Here, it is *not* arguable legally or factually that, but for counsel's alleged deficient performance, the result of the bench trial would have been different.

¶ 49 Defendant asserts his trial counsel should have challenged Darla's sworn testimony she overheard one of her assailants call another assailant by the name "Mack." According to defendant, because he is sometimes referred to as "Mack," this "surprise" evidence placed defendant at the crime scene. However, defendant ignores the trial court was "convinced beyond a reasonable doubt that the defendant either participated directly or [was] guilty by way of

accountability on Counts 2 through 6 of the bill of indictment." In reaching that conclusion, the trial court noted, *inter alia*, the call records and the historical cell site analysis showed " 'defendant was either in or right outside the Powell[s'] residence at the time this incident took place' " and the call records further showed " 'the defendant was talking with Jamal Parks the day before this incident took place and was planning the incident.' " *Walker*, 2020 IL App (4th) 180774, ¶¶ 53-54. In addition to the three telephone conversations the day before the incident, defendant and Parks "called or texted one another 12 times on November 9, 2016, before the incident, during the period of 12:02 p.m. to 3:15 p.m. Then they spoke on the phone three further times on November 9, 2016, after the incident, beginning at 7:57 p.m." *Walker*, 2020 IL App (4th) 180774, ¶ 27. Thus, even without Darla's testimony referencing "Mack," the trial court's accountability finding, based on the totality of the evidence, would not have been affected. See *Walker*, 2020 IL App (4th) 180774 (setting forth the facts of this case and the trial court's findings in great detail). As such, defendant's claim of prejudice lacks an arguable legal basis because it is completely contradicted by the record. It also lacks an arguable factual basis because the claim is clearly baseless given the court's accountability finding.

¶ 50    In light of the foregoing, I would find defendant's ineffective assistance claim pertaining to counsel's failure to challenge Darla's testimony frivolous and patently without merit. I also find defendant's other ineffective assistance claim pertaining to trial counsel's failure to redact portions of defendant's custodial interrogation interview frivolous and patently without merit, and thus I would affirm the trial court's judgment dismissing defendant's postconviction petition at the first stage of the proceedings.